**UNITED STATES of America,**
**Appellee,**

v.

**Dennis DRUMMOND, Appellant.**

**No. 525, Docket 74–2264.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1975.

Decided Feb. 11, 1975.

1050

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for appellant.

Paul F. Corcoran, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Paul B. Bergman, Asst. U. S. Atty., on the brief), for appellee.

Before KAUFMAN, Chief Judge, and FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

Dennis Drummond appeals from a judgment of the United States District Court for the Eastern District of New York, Thomas C. Platt, J., convicting appellant of conspiracy to distribute heroin. 21 U.S.C. §§ 841(a), 846. Judge Platt sentenced appellant, under 18 U.S.C. §

4208(a)(2), to five years in prison followed by a special parole term of five years. This was the same sentence appellant had received from another judge after an earlier trial for the same offense. That conviction was reversed by us in United States v. Drummond, 481 F.2d 62 (2d Cir. 1973).[1] On his second appeal to this court, appellant again does not challenge the sufficiency of the evidence against him. Rather, he argues that the delay in his retrial violated the Eastern District's speedy trial rules and the United States Constitution. Appellant also complains of an evidentiary ruling. We affirm the judgment of conviction.

## I

Our prior opinion ordering a new trial was handed down on July 5, 1973. For some reason not disclosed in the record, the mandate of this court did not issue until September 14, 1973, and was not received in the Eastern District until September 19. In accordance with procedures then in effect a different judge—Judge Travia—was that day randomly selected for the retrial. On October 1, Judge Travia began intensive proceedings in a criminal trial that eventually lasted nine months, until July 5, 1974.[2] No further steps were taken in appellant's case until April 12, 1974, when it was called before Judge Travia and adjourned for three weeks. A few days later, appellant moved to dismiss the indictment for failure to commence the retrial within the time period required by the Eastern District's speedy trial rules. Early in May, Judge Travia denied the motion and, still engaged in the long criminal trial, reassigned the case to Judge Platt, who was soon to be sworn in as a district judge. A manda-

mus petition in this court seeking to prevent the trial was denied, without prejudice to consideration of the issue on appeal, on May 21, 1974.[3] Appellant renewed the motion to dismiss before Judge Platt and for the first time also raised his constitutional right to a speedy trial. Judge Platt denied this motion, and trial commenced on July 11, 1974.

## II

Appellant's principal claim is based upon Rule 6 of the Eastern District's Plan for Achieving Prompt Disposition of Criminal Cases (the Plan). That Rule reads, in pertinent part:

*Retrials.*

Where a new trial has been ordered . . . by an appellate court, it shall commence at the earliest practicable time, but in any event not later than 90 days after the finality of such order unless extended for good cause.

Appellant's argument is simple. The retrial here did not begin within 90 days "after the finality of" our order requiring a new trial[4] and there was no "good cause" for the delay. Therefore, the indictment should have been dismissed. The Government responds that a rigid reading of Rule 6 as inflexibly directing dismissal if a retrial is not actually held within 90 days is impractical and unnecessary. The Government argues that the Rule is part of an integrated speedy trial plan, which has as its goal the elimination of prosecutorial delay. Since the United States Attorney was at all times ready to try this case, Judge Platt correctly refused to dismiss the indictment.

The difficulty with the Government's position is that the language of Rule 6 is squarely against it. Rule 6 does not say, as do other Rules in the Plan, that the

---

1. A still earlier trial had resulted in a hung jury.

2. United States v. Bernstein, et al., 72 Cr. 587, appeal filed, 74–2328.

3. Drummond v. Travia, (2d Cir. 1974) 495 F.2d 1367.

4. Appellant argues that the 90 days began to run on July 5, 1973, the date of this court's prior opinion. We do not agree. See United States v. Fernandez, 480 F.2d 726, 729 (2d Cir. 1973), 456 F.2d 638 (2d Cir. 1972). As will be seen below, it is not necessary to decide whether the 90-day period commenced on July 26, 1973 (when the mandate should have issued in the absence of a petition for a stay) or on September 14, 1973 (when the mandate did tardily issue).

Government must be ready for trial within 90 days;[5] it says that the new trial "shall commence" by the specified time limit. Furthermore, Rule 5 of the Plan, dealing with excluded periods of delay, provides:

> In computing the time within which *the government should be ready for trial under Rules 3 and 4*, the following periods should be excluded . . . . [Emphasis added.][6]

No mention is made of Rule 6. It is true, as the Government points out, that its construction of Rule 6 was embodied in the Rule's predecessor, which was part of the Second Circuit Rules Regarding the Prompt Disposition of Criminal Cases, adopted January 5, 1971 (Second Circuit Rules). The provision governing retrials in the Second Circuit Rules merely defined the starting date of the six-month period during which "the time [for retrial] shall run" and did not deviate from the general scheme of requiring only that the Government be ready for trial within defined time periods.[7] After promulgation of the Second Circuit Rules, however, the Federal Rules of Criminal Procedure were amended to require the federal district courts to adopt plans for the prompt disposition of criminal cases, subject to approval by the judicial council of the circuit. Fed.R. Crim.P. 50(b). See Hilbert v. Dooling, 476 F.2d 355, 356 n.2 (2d Cir.) (en banc), cert. denied, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973). Rule 6 of the Eastern District Plan tracks the language of the retrial provision in the model plan circulated by the Administrative Office of the United States Courts in response to amended Fed.R.Crim.P. 50(b) and is identical to the analogous rules adopted in the five other district courts in the circuit.

As compared to the earlier Second Circuit Rule, Rule 6 of the Eastern District Plan reduced the period allowed for retrial from six months to 90 days and substituted a command that the retrial commence by the specified date for the requirement merely that the Government be ready. It may be that those who accepted the Administrative Office recommendation, including the Judicial Council, focused primarily on the former change rather than on the latter. Be that as it may, we do not see how the plain language of Rule 6 can be ignored. Moreover, there is much to commend the change in emphasis embodied in Rule 6. The Government will be ready without delay to retry most defendants who obtain reversals on appeal. By hypothesis, the Government usually has recently concluded trials of these cases. Thus, to emphasize the Government's need to be ready would generally be an empty formality. Moreover, cases ordered for retrial are probably, though not necessarily, of older vintage than those scheduled for initial trial. Accordingly, it would be in the public interest to try them promptly to avoid the risk that evidence might disappear or witnesses' recollections be dimmed.[8] In

---

**5.** E. g., Rule 4 provides, in part:

> In all cases *the government must be ready for trial* within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. [Emphasis added.]

**6.** Rule 3 requires release of defendants in jail awaiting trial if the government is not ready for trial within 90 days from the date detention began. Rule 4, quoted in note 5 supra, imposes a six-month readiness limit, with dismissal as the sanction for Government noncompliance.

**7.** Paragraph 6 of the Second Circuit Rules provided:

> If the defendant is to be retried following . . . an appeal . . ., the time shall run from the date when the order occasioning the retrial becomes final.

Paragraph 4 required the Government to be "ready for trial" within six months from specified times, upon pain of dismissal.

**8.** It is worth noting that the new Speedy Trial Act of 1974, Pub.L. No. 93–619, 93d Cong., 2d Sess. (Jan. 3, 1975), 88 Stat. 2076, contains a retrial provision, which states:

> If the defendant is to be tried again following an appeal . . . the trial shall

short, both the plain language of Rule 6 and the policy behind it require us to reject the Government's construction of the Rule.

This, however, does not end the matter. Rule 6 provides that the period for retrial may be "extended for good cause." In view of the rigidity of the command of Rule 6, we believe that in this case the escape hatch of "good cause" must be construed with an awareness of the practicalities. When the case was assigned to Judge Travia on September 19, 1973, he was about to start proceedings in an unusually complex criminal trial, which lasted nine months. See note 2 supra. Once the schedule of a long, multi-defendant trial is fixed, a district judge cannot easily reschedule it to accommodate even another short trial. Appellant answers that Judge Travia might have transferred the *Drummond* case to a different judge sooner, or tried to squeeze it in between sessions of the *Bernstein* trial. The first response is a strong one. We agree with the admonition of the First Circuit, quoting then Circuit Judge Blackmun that:

> Where a multiple-judge court uses the individual calendar system, all judges must share responsibility for the prompt disposition of criminal cases, must employ a team approach to those cases, and, when necessary, must reassign them in order that they may

be tried according to the commands of the Sixth Amendment and Criminal Rules 48(b) and 50. If a judge is otherwise long committed in another case or is delayed in getting to the criminal cases on his calendar by reason of illness, personal misfortune or press of other business, this obviously does not serve to toll the enforcement of the right of a defendant awaiting trial on that judge's criminal calendar.

See United States v. Fay, 505 F.2d 1037, 1040–41 (1st Cir. 1974), citing Hodges v. United States, 408 F.2d 543, 551–52 (8th Cir. 1969). See also United States v. Rucker, 150 U.S.App.D.C. 314, 464 F.2d 823, 827 (1972) (McGowan, J.); United States v. DeLeo, 422 F.2d 487, 495–96 (1st Cir. 1970). *Cf.* United States v. Fernandez, *supra,* 480 F.2d at 729.[9]

On the other hand, the prosecution was ready to try Drummond again without undue delay and obviously misapprehended the change brought about by the Eastern District Plan adopted a few months before. The new Rule was a departure from the former requirement of prosecutorial readiness only, which still permeated the rest of the Plan. Rule 6 does not mention any sanction for failure to comply with it and was adopted without any published focus on the change for retrials. Also, while we would not ordinarily regard a defendant's inaction as significant in enforcing the speedy trial rules,[10] in the context of

---

commence within sixty days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within sixty days impractical.
18 U.S.C. § 3161(e).

**9.** Moreover, Rule 9(a) of the Plan states:
*The court has sole responsibility for setting and calling cases for trial.* Neither a conflict in schedules of Assistant United States Attorneys nor a conflict in schedules of defense counsel will be ground for a continuance or delayed setting except under unusual circumstances approved by the court

and called to the court's attention at the earliest practicable time. *Each judge will schedule criminal trials at such times as may be necessary to assure prompt disposition of criminal cases.* The United States Attorney will familiarize himself with scheduling procedures of each judge and will assign or reassign cases in such manner that the government will be able to announce ready for trial. [Emphasis added.]

**10.** Rule 7 of the Plan provides:
*Demand and Waiver Provisions.*
A demand by a defendant is not necessary for the purpose of invoking the rights conferred by these rules. However, failure of a defendant to move for discharge prior to plea of guilty or trial shall constitute waiver of such rights. . . .

this case and on these facts, we point out that Drummond was free on bail throughout the relevant period[11] and made no request that the judge reassign the retrial. Finally, a significant portion of the delay here was not due to any failure in the district court but to unexplainable delay by this court in issuing the mandate. Under all the circumstances, we regard the relevant time period as extended "for good cause" until Judge Travia reassigned the case to Judge Platt and it was called by Judge Platt shortly thereafter.[12] Cf. United States v. Bowman, 493 F.2d 594, 597–98 (2d Cir. 1974). Since Judge Platt was ready to try the case almost immediately,[13] the command of Rule 6 was not violated.[14] We stress, however, that we will not tolerate a delay of this sort occurring in the future. See United States v. Bowman, supra, 493 F.2d at 598. Both the United States Attorney and the judge to whom a retrial is assigned should closely monitor its progress. Otherwise, under the Speedy Trial Act of 1974, which establishes new outside limits for the commencement of retrials, see note 8 supra, the Government may face dismissals of indictments involving serious charges.

### III

We turn now to the remaining issues in the appeal, which require less discussion. Citing Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), and Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), appellant argues that his constitutional right to a speedy and fair trial, as well as his rights under the Plan, were violated. However, the one-year delay was not excessive. United States v. Infanti, 474 F.2d 522, 527–28 (2d Cir. 1973). Nor is there any indication that the delay was caused by deliberate prosecutorial effort to postpone the trial. See Barker v. Wingo, supra, 407 U.S. at 531, 92 S.Ct. 2182; United States v. Infanti, supra. Moreover, appellant never moved for a speedy trial, although he was represented by counsel at all times and was not incarcerated. See Barker v. Wingo, supra, 407 U.S. at 528–529, 92 S.Ct. 2182.

■ Appellant does claim the delay prejudiced him because three defense witnesses could not be located. It is said that their testimony would support appellant's claims that he had won at an all night dice game the marked money found in his possession at his arrest and that although he was at a co-conspirator's house on the day all were arrested, he had nothing to do with any drug transaction. However, appellant was not in jail; the witnesses with whom he allegedly lost contact were his own acquaintances. In addition, two of the three witnesses added little to appellant's case, merely corroborating facts which were not materially in issue. The third, one James Clark, did corroborate appellant's story regarding his big gambling win. But according to appellant, that game had 15 to 20 players, many of whom he knew by sight. Yet appellant apparently made no effort to produce any of them except Clark. And as to him, there is nothing in the record to

---

11. Drummond is still out on bail.

12. The reassignment was made on May 3. Judge Platt was not actually sworn in until May 17. He called the case on May 31. We regard the brief period from May 3 to May 31 as involving sufficiently unique circumstances (the seating of a new judge) to serve to extend the period of Rule 6 "for good cause."

13. The judge so informed defense counsel on May 31, 1974, when the judge called the case. Counsel replied that defendant was moving for dismissal, not for an immediate trial. Accordingly, argument on the motion to dismiss was set for June 14, but was apparently adjourned to June 21. On that date, Judge Platt orally denied the motion and set July 12 for the start of the trial. It actually began a day early.

14. On this disposition, we need not deal with the Government's claims, pressed at greater length in another appeal now pending in this court (United States v. Furey, 74–2266, argued Nov. 22, 1974), that the Eastern District Plan is unconstitutional and unauthorized by Fed.R.Crim.P. 50(b), which is also claimed to be invalid, and that, in any event, the Plan has been superseded by the Speedy Trial Act of 1974, see note 8 supra, which, according to the Government, rejects a rigid requirement of dismissal.

show that he would have been available had the retrial occurred sooner.[15] Finally, appellant was permitted to read into evidence at the retrial the testimony taken at the earlier trial of these defense witnesses. Considering all the circumstances and applying the " 'flexible' standards based upon practical considerations" prescribed by Barker v. Wingo, see Strunk v. United States, *supra*, 412 U.S. at 438, 93 S.Ct. 2260, we find no denial of the constitutional right to a speedy trial.

■ Appellant's final argument is that the trial judge erred in admitting evidence of a prior narcotics transaction. Appellant was charged with conspiring on February 10, 1972, with co-defendant Donald Days to distribute heroin. On that date, undercover agent Bernhardt was admitted to 210 Cornelia Street, Brooklyn, New York, where Days told him "the man" was waiting and that he wanted to make certain Bernhardt was going to show up "before he went to get the heroin." There was evidence that appellant was six or seven feet away during this conversation and had arrived earlier in a brown Oldsmobile Toronado. After Bernhardt flashed a roll of money to show he could buy the heroin, Days took some of his own money from a grey metal box, gave it to appellant, and told him "it was all right to go get the stuff." Appellant then left with the cash. The evidence in dispute concerns a similar transaction one week earlier, when agent Bernhardt came to the same house with money to buy heroin. Days first counted these bills, which had pre-recorded serial numbers, and then took currency from the same grey box, explaining that he used his own cash to purchase narcotics. He went upstairs but soon returned, telling Bernhardt that

they would have to wait for delivery of the heroin. Some time later, the doorbell rang, Days again went upstairs and returned with heroin. Bernhardt paid him and left. Shortly after that, the same Oldsmobile Toronado already referred to was seen to depart.

Appellant claims that since there was nothing to connect him with the February 3 transaction, admitting evidence of it was prejudicial error. We do not agree. The methods of operation on February 3 and 10 were the same. The same automobile that appellant admits driving on February 10 was seen at 210 Cornelia Street on February 3. Some of the pre-recorded money from the February 3 transaction was found on appellant when he was arrested. This was enough to allow the jury to find that appellant also was involved with Days on February 3 in a plan to distribute heroin. The judge charged that only if the jury so found, could it consider the evidence as relevant to the February 10 conspiracy and even then only on the issue of appellant's knowledge and intent with regard to the February 10 conspiracy. This was not error. United States v. Miller, 478 F.2d 1315, 1318 (2d Cir.), cert. denied, 414 U.S. 851, 94 S.Ct. 144, 38 L.Ed.2d 100 (1973); United States v. Deaton, 381 F.2d 114, 117–18 (2d Cir. 1967). United States v. Falley, 489 F.2d 33, 37–38 (2d Cir. 1973), relied on by appellant, is not at all the same, since the evidence objected to there concerned a narcotics transaction with which the defendants concededly had no connection. Moreover, the trial judge could properly find here that the probative value of the evidence of the February 3 transaction sufficiently outweighed its prejudicial effect to justify its admission.

Judgment affirmed.

---

**15.** Indeed, appellant testified that he had not seen Clark since "a couple of months after" his first conviction, well before the subsequent reversal and new trial.