UNITED STATES of America,
Plaintiff-Appellee,

v.

Martin L. ROEMER,
Defendant-Appellant.

No. 776, Docket 74–2677.

United States Court of Appeals,
Second Circuit.

Argued March 21, 1975.

Decided April 8, 1975.

Gerald L. Shargel, New York City (La Rossa, Shargel & Fischetti, New York City, James M. La Rossa, New York City, of counsel), for defendant-appellant.

David A. Cutner, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S.D.N.Y., V. Thomas Fryman, Jr., and Lawrence S. Feld, Asst. U. S. Attys., of counsel), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, SMITH, Circuit Judge, and MacMAHON, District Judge.[*]

J. JOSEPH SMITH, Circuit Judge:

After a jury trial in the United States District Court for the Southern District of New York, Inzer B. Wyatt, *Judge,* Martin Roemer was found guilty of violating 18 U.S.C. § 371[1] as a party to a conspiracy to defraud the United States. He challenges his conviction primarily on the ground that his trial was not begun within the time limits established by Rule 6 of the Southern Distict's Plan for Achieving Prompt Disposition of Criminal Cases. He also claims that reversal is required to vindicate his constitutional right to a speedy trial under the Sixth Amendment and that, minimally, he is entitled to a new trial in view of the trial court's erroneous exclusion of relevant evidence. We affirm the district court's judgment of conviction.

For purposes of this appeal, the details of this case's progress to trial, rather than the specifics of the criminal activities in which the defendant allegedly engaged, are of foremost concern. Roemer

---

[*] Of the Southern District of New York, sitting by designation.

1. § 371. Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

was a civilian buyer for the Army and Air Force Exchange Service's post exchanges in Europe. According to the indictment, he received payoffs from Fritz Mintz and Morton Penn for using his position to influence the exchanges to purchase merchandise from businesses represented by Mintz and Penn. Penn was granted immunity from prosecution by the government and thereafter became the key prosecution witness in Roemer's trial. Mintz, named as a defendant in the indictment, has been a fugitive from justice.

The government postponed prosecution of this and related indictments, all dated February 25, 1970, while it sought unsuccessfully to secure Mintz's extradition from Europe. Upon the various defendants' motion, Judge Morris E. Lasker of the Southern District, the district judge to whom their cases had been assigned, dismissed their indictments in December, 1972. He based his decision upon Rule 4 of the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, rules which have since been superseded by the district court plans. This court on June 11, 1973, granted the government's petition for a writ of mandamus ordering Judge Lasker to reinstate the indictments. United States v. Lasker, 481 F.2d 229 (2d Cir. 1973), cert. denied, 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974). Although the government plainly was not ready for trial within six months after indictment, as required by Rule 4, we found that its delay was excused under the allowance of Rule 5(e) for a "reasonable period of delay":

It was not the [Second Circuit Judicial] Council's aim [in drafting the rules] to make the government vulnerable to dismissal of an indictment where a co-defendant is a fugitive from justice and the government, with some reason, delays action against defendants who are present.

**2.** The statement of facts to follow is based in part upon two affidavits submitted by the government to this court. Neither in his reply brief nor at oral argument did Roemer object to the truth of the allegations contained therein. Moreover, in ruling upon a motion to dis-

*Id.* at 233. After the appellees' petition for rehearing was denied on August 7, 1973, three of them, not including Roemer, persevered in their efforts to get the indictments dismissed. On September 3, 1973, however, this court denied their motion for a stay of its mandate under Fed.R.App.P. 41(b), and on March 18, 1974, the Supreme Court denied certiorari.

At this point there ensued a series of errors in communication.[2] Although the government had already in March, 1972, indicated its readiness for trial, Judge Lasker quite appropriately chose to postpone trying the various indictments ordered reinstated by this court in United States v. Lasker, *supra,* until the Supreme Court had an opportunity to review this court's issuance of the mandamus. Notification that certiorari had been denied would therefore have set the trials into motion. As requested by counsel in the Supreme Court for three of the defendants in the companion cases (who also served as nominal counsel for Judge Lasker), the Clerk of the Supreme Court immediately sent counsel notice upon the denial of certiorari. The attorneys failed, however, to convey this information to Judge Lasker. Meanwhile, through an oversight in the Solicitor General's Office, notice of the Court's action also did not reach the United States Attorney's Office in the Southern District. In May or early June, Judge Lasker's secretary telephoned Assistant United States Attorney Frank Wohl, who had agreed to inform the judge of the progress of the case in the Supreme Court. Prompted by the secretary's inquiry as to the case's present status, Wohl called the Solicitor General's Office and learned for the first time of the March 18 denial of certiorari. He promptly conveyed the information by telephone to Judge Lasker's secretary but apparently neglected to send her a

miss one of the seven related indictments involved in United States v. Lasker, *supra,* Judge Tenney of the Southern District of New York accepted the assertions in these affidavits. United States v. Carone and Mintz, 70 Cr. 132 (S.D.N.Y. March 4, 1975).

letter, as she requested at the time, reiterating the details of his telephone message. This added precaution to ensure that Judge Lasker received the news of the Supreme Court's action was sorely missed, moreover, for when Wohl called Judge Lasker on July 24, 1974, to ask about the trial dates set for the seven reinstated indictments, the judge evinced no knowledge of the denial of certiorari. On August 1, 1974, Judge Lasker reassigned Roemer's case to Judge Wyatt, who, after the government had filed its second notice of readiness, held a pretrial conference on August 14 and set the case down for trial on October 29. Prior to trial, the defendant in a motion to dismiss the indictment asserted his right to a speedy trial under the Southern District's plan and the federal Constitution. The court denied the motion, the trial began on schedule, and the appellant's conviction followed.

### I. Compliance with Rule 6

■ Rule 6 of the Southern District's Plan for Achieving Prompt Disposition of Criminal Cases provides:

*Retrials.*

Where a new trial has been ordered by the district court or a trial or new trial has been ordered by an appellate court, it shall commence at the earliest practicable time, but in any event not later than 90 days after the finality of such order unless extended for good cause.

Preliminarily, we dispose of the appellee's claim that Rule 6 is inapplicable to this case because, according to the rule's caption, it deals only with delays in conducting retrials and the delay at issue in the instant case is in commencing a first trial. We read the rule quite to the contrary. It gives greater effect to the draftsmen's intent for us to regard the title "retrials" as a generally accurate but somewhat under-inclusive description of the rule's subject matter than to ignore entirely the text's express affirmation of its applicability to situations "[w]here . . . a trial . . . has been ordered by an appellate court . . . ." This interpretation of the rule accords with the basic principle of statutory construction which gives precedence, in the event of irreconcilable conflict, to words in the body of a provision over those in the caption. *See* United States v. Minker, 350 U.S. 179, 185, 76 S.Ct. 281, 100 L.Ed. 185 (1956); Brotherhood of Railroad Trainmen v. Baltimore & Ohio R. R., 331 U.S. 519, 528–29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947); Strathearn S. S. Co. v. Dillon, 252 U.S. 348, 354, 40 S.Ct. 350, 64 L.Ed. 607 (1920); Tibke v. Immigration and Naturalization Service, 335 F.2d 42, 45 (2d Cir. 1964); *cf.* Uniform Commercial Code § 1–109:3. The Supreme Court's explanation in Brotherhood of Railroad Trainmen, *supra,* 331 U.S. 519 at 528–29, 67 S.Ct. 1387, of the rationale underlying this principle of construction confirms the propriety of invoking it to interpret Rule 6:

[H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. [Citations omitted]. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

We hold, therefore, that Rule 6 is not limited to retrials but instead extends to

cases, like the one now before us, which an appellate court orders to a first trial.[3]

■■ The 90-day limit established by Rule 6 was clearly not met in this case. This court's order in United States v. Lasker, *supra,* that Roemer's indictment be reinstated became final on March 18, 1974, with the Supreme Court's denial of certiorari,[4] and the trial did not get underway[5] until October 29, more than seven months later. The relevant inquiry thus becomes whether or not the delay beyond 90 days was the result of "good cause," within the meaning of Rule 6.

■ Two precepts laid down in our prior decisions guide this inquiry. First, "the escape hatch of 'good cause' must be construed with an awareness of the practicalities." United States v. Drummond, 511 F.2d 1049, 1053 (2d Cir. 1975). Secondly, "the Plan was not established primarily to safeguard defendants' rights . . . [but instead] to serve the public interest in the prompt adjudication of criminal cases." United States v. Flores, 501 F.2d 1356, 1360 n. 4 (2d Cir. 1974) (*per curiam*).

■ Attention to these considerations indicates the inappropriateness of charging the delay from March 18 to July 24 to the court. Judge Lasker's Supreme Court counsel and his secretary were obviously remiss in failing to relay to him messages that certiorari in United States v. Lasker had been denied. It is dubious, however, that the public interest in deterring unnecessary delays in bringing cases to trial would be seriously disserved by excusing in this instance delay attributable to negligence of this sort. Some sacrifice of this deterrent interest is validated, moreover, by the concomitant vindication of the public's competing interest in the punishment and deterrence of criminal behavior. Furthermore, having been indulgent of delay stemming from similar administrative oversight in this court, United States v. Drummond, *supra,* 511 F.2d 1049, at 1054 (mandate ordering new trial not issued until more than two months after opinion so requiring), we are loathe to create a double standard by treating district court-initiated delays during this same period more severely.

Through no fault of its own, the United States Attorney's Office in New York did not learn of the denial of certiorari until May or early June. The delay from March 18 to at least May 1, then, cannot fairly be charged against the prosecution. Nor, in view of the probably minor deterrent effect of punishing the Solicitor General's Office for its negligence in this matter and the competing public interest in enforcement of the criminal laws, should this period of delay be counted against the government generally.

■■ Even if the court is excused until July 24 and the government until as late as mid-June, each allowed more than

---

3. The government also attempts to obviate attention to the merits of the Rule 6 claim by arguing that Roemer waived his right to raise this claim. It is true that the defendant did not move before trial to dismiss the indictment under Rule 6, and Rule 7 provides that "failure of a defendant to move for discharge prior to plea of guilty or trial shall constitute waiver of such rights conferred by these rules." Roemer did make a timely motion, however, to dismiss for undue delay under Rule 4. In light of our ultimate disposition of this alleged ground for reversal, we may assume *arguendo* that the Rule 4 motion asserted the appellant's right to be tried within the time limitations set by the district court plan with sufficient clarity to avoid the effect of both Rule 7 and the general prohibition on raising issues for the first time on the appellate level.

4. Although Roemer did not pursue possible appellate reversal of this court's decision in United States v. Lasker after August 7, 1973, he plainly stood to benefit from his co-appellees' efforts in this regard. The order directing a trial for Roemer did not therefore become final until his co-appellees' attempt to overturn *Lasker* came to rest with the Supreme Court's denial of certiorari.

5. Rule 6 sets the time limit for the trial to commence, not for the government to declare its readiness to try the case. *See* United States v. Drummond, 511 F.2d 1049, 1052 (2d Cir. 1975). *See also* text accompanying notes 6–8 *infra.*

90 days to run before Roemer's trial.[6] Both apparently assumed that Rule 6, like Rule 4 ("All Cases: Trial Readiness and Effect of Non-Compliance") and the superseded Second Circuit rules, establishes a date by which the government must declare its readiness for trial, rather than a deadline by which the trial itself must begin. Manifestly, if readiness were the test applicable to this case, the district court plan would be satisfied, for the government had long since indicated its preparedness to proceed to trial in March, 1972.[7] When this court in United States v. Drummond, *supra,* held that Rule 6 (in the identical Eastern District Plan) was a trial-oriented rather than readiness rule, we excused the delay stemming from the government's action upon the contrary assumption:

> [T]he prosecution was ready to try Drummond again without undue delay and obviously misapprehended the change brought about by the Eastern District Plan adopted a few months before. The new Rule was a departure from the former requirement of prosecutorial readiness only, which still permeated the rest of the Plan. Rule 6 does not mention any sanction for failure to comply with it and was adopted without any published focus on the change for retrials.

511 F.2d 1049 at 1053. Since *Drummond* was not decided until February 11, 1975, the court and government obviously lacked in the instant case the advantage of *Drummond's* clarification of the rule's focus on the trial itself. The same considerations which counseled an indulgent view in *Drummond* of delay resulting from a construction of Rule 6 in terms of readiness for trial rather than actual commencement of trial apply with equal force in this case. Also as in *Drummond,* furthermore, a determination that "good cause" justified the delay is more easily made in light of the defendant-movant's failure to request a trial prior to the expiration of the 90-day period set by Rule 6[8] as well as his freedom on bail throughout the months in question. *See id.* at 1054.

We therefore reject the appellant's contention that Rule 6 of the Southern District's plan requires dismissal of the indictment. A number of mishaps and mistaken assumptions generated the delay beyond 90 days and provided "good cause," within the meaning of Rule 6, for such delay. We wish to indicate, however, our serious concern at the sluggishness with which justice was finally achieved in this case and take this opportunity to remind district courts and government attorneys of their present responsibility to keep abreast of developments in cases to which they are assigned. Measures must be taken both in the offices of the courts and the offices of the government prosecutors to flag the time requirements in all criminal cases. Failure to do so in the future will not be treated lightly. Particularly under the generally more stringent requirements of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174, scheduled to take effect on July 1, 1975, negligence of the sort displayed in this case is likely to lead to the dismissal of indictments.

## II. Satisfaction of Sixth Amendment Rights

Notably less substantial is Roemer's claim that he was denied his Sixth Amendment right to a speedy trial. In

---

**6.** Although Judge Wyatt commenced the trial "not later than" 90 days after the assignment of Roemer's case to him (specifically, on the 90th day), the court may not be viewed in terms of its individual members for purposes of calculating delay. *See* United States v. Drummond, *supra,* 511 F.2d 1049, at 1053. Judge Lasker's week on the case (July 24–August 1) therefore brings the judicial total, excusing for "good cause" the period prior to July 24, to more than 90 days.

**7.** The government's second notice of readiness (in August, 1974) was superfluous. *See* United States v. Bisgyer, 384 F.Supp. 504, 505 (S.D.N.Y.1974).

**8.** Rule 7 expressly rejects the equation of a failure to demand a trial with a waiver of one's rights under the rules.

United States v. Lasker, *supra,* we considered the period from the indictment's rendition in February 1970, until March, 1972. In light of the four factors announced in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), as relevant to the consideration of Sixth Amendment speedy trial claims —"[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant"— we determined that Roemer's constitutional right to a speedy trial had not been violated. United States v. Lasker, *supra,* 481 F.2d 229 at 237. Since the delay has grown beyond that period considered in *Lasker,* our decision in that case does not compel a similar result here. The appellant's inability to point to any change in the Barker v. Wingo factors other than length of delay, however, calls for the same disposition of his current Sixth Amendment claim as his earlier one.

Thus, the appellant contends that "some degree of prejudice should be presumed,"[9] but plainly the balancing test elucidated in Barker v. Wingo contemplates a showing of actual prejudice. *See* Barker v. Wingo, *supra,* 407 U.S. 514 at 532–33, 92 S.Ct. 2182. Also fallacious is Roemer's attempt to characterize his 1972 motion to dismiss for post-indictment delay as an assertion of his right to a speedy trial and thus a factor in his favor this time in the Barker v. Wingo calculus. This claim overlooks the very different footing on which Roemer's case was placed by Judge Lasker's dismissal of the indictment. In view of the dismissal, the mandamus ordering the district court to reinstate the indictment must be seen as the functional equivalent, for purposes of the present speedy trial claim, of an initial indictment. Only a demand for trial *after* the mandamus would therefore support a subsequent motion to dismiss for delay based upon the Sixth Amendment. The de-

fendant obviously could have tried to hasten his day in court by asking for it. He chose not to do so, however, in hopes of catching the government in a violation of statutory or constitutional norms. As Barker v. Wingo makes eminently clear, a defendant follows such a course at almost certain detriment to his cause. *See id.* at 531–32, 92 S.Ct. 2182.

We conclude that Roemer was granted the speedy trial guaranteed him by the Sixth Amendment.

### III. Propriety of Evidentiary Ruling

Finally, Roemer argues that the district court erred in refusing to allow him to offer proof of his generally scrupulous attention to his duties. By establishing himself as a model employee for some 20 years, Roemer hoped to convince the jury that he must have acted properly in his dealings with Mintz and Penn.[10]

The appellant concedes that evidence of this sort is regularly excluded on grounds of relevance. He maintains, however, that the trial court abused its discretion in excluding this evidence after it had allowed the prosecution to offer proof of Roemer's general faithlessness to his public trust. This proof lay, according to the appellant, in the prosecution's effort to establish Roemer's violation of a "Certificate of Understanding" signed by him which set forth conflict of interest rules by which Roemer was expected to abide in the performance of his duties. Not having taken exception to the introduction of this evidence in the district court, the appellant can only complain of the court's admission of the certificate into evidence if it amounted to plain error. Probably mindful of the stringent standards for recognizing plain error, *see* Troupe v. Chicago, D. & G. Bay Transit Co., 234 F.2d 253, 259–60 (2d Cir. 1956), Roemer eschews a plain error tack in favor of one based on the proposition

---

**9.** Brief of Appellant at 31.

**10.** *See* Brief of Appellant at 38. It should be noted that the district court did permit Roemer

to introduce evidence tending to prove that his dealings with Mintz and Penn specifically were always legitimate.

that the erroneous admission of evidence offered by the prosecution justifies the otherwise erroneous admission of evidence offered by the defense. Roemer's claim is thus basically a strained effort to avoid the demanding test for reversal on plain error, an elaborate attempt to argue that two wrongs *do* make a right.[11] We have little difficulty finding, therefore, that the district court ruled quite within its discretion in excluding the evidence of Roemer's faithful performance of his tasks over the years.

The appellant's trial was initiated with sufficient promptness to satisfy Rule 6 of the Southern District's Plan for achieving Prompt Disposition of Criminal Cases as well as the Sixth Amendment to the Constitution. In addition, the proffered evidence of Roemer's ever-scrupulous attention to possible conflicts of interest in the performance of his duties was properly excluded for irrelevance. The judgment of conviction is therefore affirmed.

Affirmed.

11. Whether the admission into evidence of the certificate in fact constituted error thus need not be decided. It appears, however, that it was properly admitted to lay the groundwork for proof of criminal ꞏ ꞏ ꞏ+.