**UNITED STATES of America**

**v.**

**Urban J. DIDIER and Edward Ashdown, Defendants.**

**No. 73 Cr. 169.**

United States District Court,
S. D. New York.

July 26, 1975.

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for the United States; Robert Gold, Asst. U. S. Atty., of counsel.

Rudolph E. Harper, Redondo Beach, Cal., for defendant Didier.

## OPINION

IRVING BEN COOPER, District Judge.

Defendant Didier moves to dismiss the indictment on the ground that he was deprived of his right to a speedy trial, secured by both the Southern District Plan for Achieving Prompt Disposition of Criminal Cases ("Southern District Plan") and the Sixth Amendment to the Constitution.

On February 16, 1973 Indictment 73 Cr. 169 was filed charging defendants Didier, Ashdown and Lombardozzi with conspiracy (Count One), additionally Didier and Lombardozzi with the substantive crime of interstate transportation of stolen securities (Count Two), in violation of 18 U.S.C. §§ 371 and 2314, respectively.

On November 26, 1973 defendants Didier and Ashdown commenced a jury trial before us.[1] The jury began their deliberations on December 3, 1973. Upon learning that the jury was hopelessly deadlocked, we declared a mistrial.

On May 22, 1974 the Government filed its Notice of Readiness to proceed with the retrial of Didier and Ashdown on or after May 23, 1974. In a letter dated June 10, 1974 the Government requested that the retrial be set down for the fall of 1974 in order to allow sufficient time for the United States Court of Appeals for the Fifth Circuit to decide Ashdown's appeal from his mail fraud con-

---

1. On that same date Lombardozzi pled guilty to Count One of the indictment. On September 27, 1974 we sentenced Lombardozzi to eighteen months imprisonment, pursuant to 18 U.S.C. § 4208(a)(2).

**6**

viction in the Western District of Texas. We recognized as meritorious the Government's position and so by letter dated June 17, 1974 we scheduled the trial of these two defendants for the fall of 1974. Ashdown's conviction was affirmed by the Fifth Circuit on March 17, 1975. *United States v. Ashdown*, 509 F.2d 793 (1975).

On March 25, 1975 the Government promptly and properly requested the immediate retrial of the defendants. On March 27 by letter we scheduled April 2, 1975 for a conference of all parties concerned. Copies of both letters were sent to Didier's attorney, Robert Talcott, Esq., a resident of California. However, he had changed his address without notifying either the Court or the Government and the letters were returned unopened.

At the end of April 1975, Mr. Talcott informed the Government he would not represent Didier at the retrial of this case because Didier had refused to pay him for legal services rendered at his first trial, and that Rudolf Harper, Esq., another California attorney, would replace him. Mr. Harper confirmed Mr. Talcott's representation at a conference called by the Court on June 12, 1975 at which we fixed September 2, 1975 as the definite date for retrial. (On July 16, 1975, the present whereabouts of co-defendant Ashdown being unknown, we issued a bench warrant for his arrest.)

In his present motion Didier claims he was denied his right to a speedy trial under the Southern District Plan and the Sixth Amendment. For the reasons that follow we reject his contentions and deny his motion in its entirety.

## I. Didier's Claim under Rule 6 of the Southern District Plan

Didier's principal contention is that the Government violated Rule 6 of the Southern District Plan.[2] Rule 6 of the Southern District Plan provides:

*Retrials*

Where a new trial has been ordered by the district court or a trial or new trial has been ordered by an appellate court, it shall commence at the earliest practicable time, but in any event not later than 90 days after the finality of such order unless extended for good cause.

Didier claims his right to a speedy trial was violated here since a second trial was not commenced within 90 days of our declaration of a mistrial on December 3, 1973.

In opposition, the Government raises two arguments: first, that Didier waived his right to a speedy trial under the Southern District Plan by a signed stipulation, and second, since it misunderstood the changes effected by the Southern District Plan, the 90 day time period for retrial should be extended for "good cause."

On September 18, 1973 Didier entered into a stipulation with the Government, signed by him and his former attorney, Mr. Talcott. The stipulation provides in pertinent part:

The defendant URBAN J. DIDIER gives up and waives his right to have been present for the trial setting, and further waives his right to a speedy trial.

Several factors support the validity of this waiver: both Didier and his attorney signed it; it bears no extrinsic indicia of coercion; until July 2, 1975 when Didier filed his sworn affidavit in support of the instant motion, he never attempted to disavow or renounce the waiver.

■ It is well-settled in this District that where there has been a mistrial the effect is the same as if there had been no trial at all. *United States v. Gladding*, 265 F.Supp. 850, 854 (S.D.N.Y. 1966). Consequently,

[s]ince following the mistrial the status of this prosecution was as if there

2. The Southern District Plan went into effect on April 1, 1973.

had been no trial at all, defendant's constitutional right to a speedy trial was revived. *Id.*

Accordingly, although we entertain no doubt that the stipulated waiver foreclosed any claims that Didier might make regarding a speedy trial in November 1973, we have concluded that once a mistrial was declared his right to a speedy trial was revived.

We are constrained to reject the Government's contention of waiver on constitutional grounds. We rely on *Barker v. Wingo,* 407 U.S. 514, 525–26, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972):

> Courts should "indulge every reasonable presumption against waiver," *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937), and they should "not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co. v. Public Utilities Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).

We find it difficult to presume that by stipulation Didier intended to waive forever his right to a speedy trial. We observe that in his affidavit he alleges, *inter alia,* that he did not consciously waive his future right to a speedy trial. (Didier Aff., p. 1) Since we reject the Government's arguments, we hold that Didier did not waive by stipulation his right to a speedy trial.

We find more merit in the other argument raised by the Government in opposition to Didier's Rule 6 claim. In substance, the Government contends that prior to the Second Circuit's ruling in *United States v. Drummond,* 511 F.2d 1049 (1975), it was confused as to which provision governed the period in which to commence the retrial of the defendants: Rule 6 of the Southern District Plan, which required actual commencement of retrial within 90 days of the mistrial, or Paragraphs 4 and 6 of the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases ("Second Circuit Rules")[3] which required the Government to be ready for trial within six months of the mistrial. In brief, the Government urges that, as in *Drummond, supra* at 1054, the 90 day time period for retrial should be extended for "good cause."

The Court in *Drummond* rejected an argument virtually identical to that advanced by Didier. It held it would not dismiss the indictment although the U. S. Attorney for the Eastern District had violated Rule 6 of the Eastern District Plan for Achieving Prompt Disposition of Criminal Cases[4] by not retrying Drummond within 90 days of a Second Circuit order reversing his conviction. In so ruling the Court stated:

> [T]he prosecution was ready to try Drummond again without undue delay and *obviously misapprehended* the change brought about by the Eastern District Plan adopted a few months before. The new Rule [6] was a departure from the former requirement of prosecutorial readiness only, which still permeated the rest of the Plan. Rule 6 does not mention any sanctions and was adopted without any published focus on the change for retrials. *Id.,* at 1053. (emphasis supplied)

The Court concluded that "[u]nder all the circumstances, we regard the relevant time period as extended 'for good cause.'" *Id.,* at 1054.

The principles enunciated in *Drummond* were reemphasized in *United*

3. The Second Circuit Rules were adopted on January 5, 1971. Paragraph 4 mandates that the Government must be *ready* for trial within six months of specified times, *e. g.,* indictment, arrest, etc., upon pain of dismissal. Paragraph 6 of the Second Circuit Rules provides in pertinent part: "If the defendant is to be retried following a mistrial . . . the time shall run from the date when the order occasioning the retrial becomes final." Accordingly, here, under the Second Circuit Rules, the Government had to be ready to retry these defendants by June 3, 1973.

4. Rule 6 of the Eastern District Plan is identical with Rule 6 of the Southern District Plan.

States v. Roemer, 514 F.2d 1377 (2d Cir. 1975). In *Roemer* the Court rejected defendant's contention that he was denied a speedy trial pursuant to Rule 6 of the Southern District Plan because he was tried more than 90 days after an appellate court ordered him to trial for the first time. After ruling preliminarily that the "Retrials" caption in Rule 6 encompassed cases in which an appellate court orders a first trial, *id.* at 1380–81, the Court stated:

> Since *Drummond* was not decided until February 11, 1975, the court and government obviously lacked in the instant case the advantage of *Drummond's* clarification of the rule's focus on the trial itself. The same considerations which counseled an indulgent view in *Drummond* of delay resulting from a construction of Rule 6 in terms of readiness for trial rather than actual commencement of trial apply with equal force in this case.
>
>     \*    \*    \*    \*    \*    \*
>
> We therefore reject [Roemer's] contention that Rule 6 of the Southern District's plan requires dismissal of the indictment. A number of mishaps and mistaken assumptions generated the delay beyond 90 days and provided "good cause," within the meaning of Rule 6, for such delay. *Id.*, at 1382.

The policy of both *Drummond* and *Roemer* applies directly here. In the instant case, the Government plainly misunderstood the applicability of Rule 6 of the Southern District Plan and the Second Circuit Rules. The genuineness of its confusion is attested to by several factors. A strict reading of Rule 6 of the Southern District Plan may well have led the Government to the false assumption that mistrials—not mentioned in the Rule 6—were not governed by the Southern District Plan.[5] Further, the Government filed its Notice of

Readiness for retrial on May 22, 1974—well within the applicable period of the Second Circuit Rules—under the obvious assumption that the Second Circuit Rules applied. Finally, upon learning of the *Drummond* decision, the Government moved expeditiously to secure a retrial of these defendants. Any delay subsequent to March 1975 is obviously attributable to Didier himself and the failure of his former attorney, Mr. Talcott, to inform the Court of a change in counsel.

    ■ In sum, the Government's failure here, as in *Drummond* and *Roemer*, to bring about a prompt retrial was based wholly on misunderstanding. We accept the explanation and hold that the 90 day period of Rule 6 of the Southern District Plan should be extended for "good cause." Accordingly, we reject Didier's claim based on Rule 6.

## II. Didier's Sixth Amendment Claim

    ■■ Didier's claim that he was denied his right to a speedy trial as guaranteed under the Sixth Amendment has little merit. In the leading case of *Barker v. Wingo, supra*, the Supreme Court outlined four factors that must be balanced in order to assess the validity of a speedy trial claim: (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. *Id.*, at 530. Applying that balancing test here, we conclude that Didier was not denied his constitutional right to a speedy trial. We have already dealt with (1) and (2). As to (3) and (4): Didier failed to assert his right to a speedy trial, and there is an absence of any prejudice to him. As noted, *supra* p. 6, until July 1975, Didier did not assert his right to a speedy trial. We point out that, as in *Drummond* and *Roemer*, Didier was free on bail during the relevant period. His silence during

---

5. *Compare*, Paragraph 6 of the Second Circuit Rules, note 3, *supra*, which explicitly states that mistrials fall within its provisions. However, for the reasons set forth in *Roemer, supra* at 1380–81, we hold that

the "Retrials" provision of Rule 6 extends to mistrials. See also, The Speedy Trial Act of 1974, 18 U.S.C. § 3161(e); N.Y.Crim.P. Law § 30.30(5).

these past months stands in sharp contrast to his present clamoring. In addition, we discern no cognizable prejudice. Didier complains of financial and mental hardship. However, he has not sought to substantiate them. In comparison, *Barker* requires a showing of actual, concrete prejudice. *Id.*, at 532–33.

A part of the total delay was attributable to our concern over wasting judicial effort by conducting separate trials for Didier and Ashdown.

Since we find that Didier has failed to satisfy the balancing test of *Barker*, his claim based on a denial of his Sixth Amendment right to a speedy trial must be denied.

Simply put, we do not countenance the lapse of approximately eighteen (18) months between trials. The time accounting reflected herein, however, leaves us no alternative, if justice is to be done the Government and defendants alike: trial date (as heretofore fixed) September 2, 1975.

Motion denied in all respects.

So ordered.