**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Patrick M. CULLEN,
Defendant-Appellant.**

**No. 13571.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 9, 1984.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Nov. 26, 1984.

Application to Transfer Denied
Jan. 15, 1985.

John D. Ashcroft, Atty. Gen., Thomas Carter, II, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Paul T. Graham, Carson, Monaco, Coil, Riley & McMillin, P.C., Jefferson City, for defendant-appellant.

GREENE, Judge.

Patrick M. Cullen was jury-convicted of three counts of the class A felony of kidnapping, § 558.011.1(1),[1] one count of the class B felony of armed criminal action, § 571.015, and one count of attempted escape from confinement, § 558.011, and was thereafter sentenced by the trial court, as a prior offender, to two life sentences and a total of 46 years' imprisonment on the five offenses in question.

The sufficiency of the evidence to sustain the jury verdicts is not challenged on appeal. It suffices to say that evidence in the record supporting the verdicts shows that on July 25, 1981, Cullen, an inmate of the Missouri State Penitentiary who had three prior felony convictions, and another inmate, William Lewis Herron, who had four prior felony convictions, including one for first degree murder, attempted to escape from the penitentiary. They had a cutting torch, which they planned to use to cut the bars at the various security doors along their escape route, and two loaded pistols. Billy Holt, an employee of the prison for many years, was later convicted for smuggling contraband into the prison.

While Cullen was cutting the bars on one of the doors, he was discovered by Officer Charles Turner, a prison guard. Turner was taken hostage and tied to a chair by Herron. Another officer, George Thompson, became alarmed when Turner did not return from his appointed rounds and started to call the Control Center to report Turner's absence when he was also taken hostage by Herron. Cullen continued to use the cutting torch in the break-out attempt. Turner escaped temporarily, went to another room where he broke a window and blew his whistle to alert other guards of the escape attempt. Cullen recaptured Turner at pistol-point. When he brought Turner back to where Herron was guarding Thompson, Cullen said, "We ought to kill the son-of-a-bitch; he blowed the whistle on us." Herron said, "No, let's wait." Richard Childs, a Zone Lieutenant, was taken hostage at pistol-point when he came to the area to make his daily check on the housing unit. The three guards were then held hostage by Herron and Turner in an office area.

By this time, the prison warden had been alerted and negotiations for the release of the hostages started over the telephone between Herron, the warden and the assistant warden. During this time, Cullen was guarding the three hostages and threatening to kill Turner with his pistol. Finally, after realizing that they were not going to be set free in return for the release of the hostages, Cullen and Herron released the guards and surrendered. The filing of the charges in question followed.

Cullen's first point relied on in this appeal contends that the trial court erred in overruling his motion to dismiss for failure

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

to grant him a speedy trial. Cullen urges that the undue delay between the time of his arrest and the date of trial was caused substantially by the state to his prejudice.

Facts pertinent to this issue are that Cullen remained in the penitentiary after he surrendered on July 25, 1981. He was serving "10 and 5" on a prior conviction. In addition, he had "a parole detainer for the feds and I owe them 9 and a half more years ...." He knew "I'm never gonna make parole ...." Cullen was indicted on November 1, 1981, in Cole County, the site of the incident in question, and arraigned December 1, 1981. He entered pleas of not guilty and not guilty by reason of mental disease or defect excluding responsibility. A psychiatric examination was ordered, and a report of the results was filed with the trial court on September 14, 1982.

Venue of the case was moved to Randolph County where the trial court, on May 25, 1983, dismissed without prejudice all charges against Cullen arising out of the escape attempt for lack of a speedy trial. In connection with the dismissal, the trial court made the following findings and conclusions:

> In ordering dismissal without prejudice, the Court has considered the seriousness of the offenses charged, namely, the kidnapping and taking of prison guards as hostages, and the use of weapons in connection therewith. The Court finds from the unchallenged statements of the State that Defendant is presently serving a long period of incarceration, and will presumably be available for trial, and difficulty in trial preparation will be no greater for Defendant in the future than it is at present time. The Court further finds that the State's ability to try the Defendant is similarly not impaired, owing to the availability of witnesses. The Court believes that the order of dismissal is compatible with twin public policies, one being in the speedy trial law, that, except for excluded periods of time, the Defendant shall be tried within 180 days; and that its order of dismissal without prejudice is compatible with the other public policy that those who are charged with serious crimes should be brought to trial.

The state immediately filed a new complaint against Cullen followed by a five-count information charging the offenses for which he was convicted. The case was transferred to Phelps County on change of venue. Prior to trial, which started on September 14, 1983, Cullen again filed a motion to dismiss for violation of the Speedy Trial Act, which motion was overruled by the trial court.

Boiled down, Cullen's argument on this point is that the length of the delay in bringing his case to trial prejudiced his ability to present his defense and thus violated his constitutional and statutory right to a speedy trial.

■ In criminal prosecutions, the accused has a constitutional right to a speedy and public trial. Factors to be considered in determining whether the accused was denied that right are 1) length of the delay, 2) reasons for the delay, 3) the accused's assertion of his right, and 4) prejudice to the accused from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972).

■ Each case in which speedy trial violations are claimed must be determined on its own facts. *State v. Black*, 587 S.W.2d 865, 869 (Mo.App.1979). The delay in this case of 567 days from the time Cullen was first charged until he was finally tried was not so inordinately lengthy as to automatically weigh heavily against the state. See *Barker v. Wingo*, supra, (five-year delay—no denial of speedy trial); *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630 (1966) (19–month delay—no denial of speedy trial); *United States v. Roemer*, 514 F.2d 1377, 1382 (2d Cir.1975) (56–month delay—no denial of speedy trial); *United States v. Skillman*, 442 F.2d 542, 557 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971) (20–month delay—no denial of a speedy trial). *Morris v. Wyrick*, 516 F.2d 1387, 1390 (8th Cir.1975).

It is difficult to determine the reasons for all of the delay due to an incomplete record. Be that as it may, the docket sheets for this case, which are part of the legal file, show numerous motions for disqualification of judges, changes of venue, discovery, psychiatric examinations, continuances, etc., all filed by Cullen. Processing and deciding these motions undoubtedly contributed substantially to the delay in bringing the case to trial. Such delays are not weighed against the State. *State v. Dean*, 637 S.W.2d 409, 411 (Mo.App.1982).

The third factor to be considered is the timing of Cullen's first complaint of denial of his right to a speedy trial. The record indicates it was on May 25, 1983, which was 22 months after the escape attempt. Cullen's failure to timely assert his right to a speedy trial weighs heavily against him.

Finally, we fail to see where Cullen suffered any prejudice by reason of trial delay. Although Cullen claims he was deprived of the testimony of Charles Turner, one of the hostages who had left his employment as a prison guard and could not be located at time of trial, Cullen has not told us in anything filed with this court what Turner would have testified to that would have helped him, and we cannot remotely envision how Turner's testimony would aid the defendant. Cullen does not claim, and the record does not show, that he suffered any oppressive pretrial incarceration, or anxiety and concern over incarceration. He was already a long term inmate in the penitentiary, and, in his words, owed the feds nine and a half years. This being so, he was not, in reality, imprisoned because of this case, but was imprisoned on other convictions. Further, there is no showing that the state procured the absence of Turner, or of Scott Thomas, who was unavailable between June 20, 1983 and August 3, 1983. Thomas was present at trial and did testify as a defense witness. A thorough examination of the record furnished us does not show any prejudicial pretrial delay. The point has no merit and is denied.

Defendant's remaining point alleges prejudicial closing argument by the prosecuting attorney. The complained of argument was as follows:

[MR. CALLAHAN:] The—one thing I want to start off with you right away, one legal principle, not only in Missouri law but, as I understand it, in every law in the state—in this country, is that when Mr. Cullen and Mr. Herron decided back in July to make this escape attempt they acted together as a unit. And the law in Missouri is that whatever Mr. Herron does to advance the escape—

MR. GRAHAM: Objection, Your Honor. My objection is that he's now directing the jury on law, in addition to what you have read.

THE COURT: Sustained.

MR. CALLAHAN: I may argue the law as long as I don't misstate it.

. . . .

And Mr. Cullen, when he's cutting those bars and producing the crime of escape, he is doing that in conjunction with what he agreed to do with Mr. Herron.

MR. GRAHAM: Your Honor, I'm going to have to object to that line of argument for the same basis as before.

THE COURT: Objection will be overruled.

. . . .

MR. CALLAHAN: While Mr. Cullen is out there cutting those bars, he's doing what him [sic] and Herron had agreed they were going to do.

MR. GRAHAM: Objection.

THE COURT: Overruled.

MR. CALLAHAN: And, by the same token, as Mr. Herron is back in that office, at first keeping the guards busy, or whatever, while Cullen can go ahead and cut, Herron is doing, also, what they agreed to do in their total plan which was to try to escape.

MR. GRAHAM: Objection.

THE COURT: Overruled.

. . . .

[MR. CALLAHAN:] Everything Herron did, Cullen agreed or affirmed be-

cause that's part of the inmate code. What Herron did Cullen affirmed and he thereby did.

MR. GRAHAM: Objection, Your Honor, to the same reason as before.

THE COURT: Overruled.

MR. CALLAHAN: And it worked both ways to the extent that Herron was affirming and wanting and agreeing with Cullen should be doing stuff. That's Herron, also.

Cullen contends that by this argument the prosecutor was urging the jury to convict him as an aider and abettor; that MAI–CR2d 2.12 instruction was not given, and that, therefore, the state was arguing for a conviction based on a lower burden of proof than was required under the instructions read to the jury by the trial court.

■ While the complained of argument falls short of a purist presentation, we can understand it, but fail to see how it was prejudicial to Cullen. The prosecutor's comments, except for his reference to the "law in Missouri is," the objection to which was promptly sustained, were not arguments as to law regarding aiders and abettors, but were merely references to facts in evidence. These facts referred to Cullen's overall knowledge of the escape plan, and his commitment to carry it out.

In regard to the kidnapping charges, the record conclusively shows that Cullen's trial strategy was to blame the capture of the hostages on Herron and to absolve himself of blame. His analysis, in face of the facts, does not hold water. The evidence is undisputed that when Turner temporarily escaped, Cullen tracked him down and caused him to surrender again at gun point. The evidence is also undisputed that Cullen and Herron *both* participated in holding the three guards hostage for several hours after the escape plot was discovered. Since both Cullen and Herron were armed with loaded pistols from the very start of the break-out attempt, it is only logical to infer that both of them would, if necessary, take hostages as part of their escape plan. Cullen was guilty as a principal, not as an accessory. The prosecutor's

argument in support of that thesis was not prejudicial. We find no error in the point complained of.

Judgment affirmed.

TITUS, P.J., and FLANIGAN, J., concur.