481 F.2d 229
 UNITED STATES of America, Petitioner,
v.
Morris E. LASKER, United States District Judge for the
Southern District of New York, Respondent.
UNITED STATES of America, Appellant,
v.
Raymond F. CARR, Appellee.
UNITED STATES of America, Appellant,
v.
Dorothy Lubkert SHEA, Appellee.
UNITED STATES of America, Appellant,
v.
Lamont H. MUNNS, Appellee.
UNITED STATES of America, Appellant,
v.
Melville L. BISGYER, Appellee.
UNITED STATES of America, Appellant,
v.
Martin L. ROEMER, Appellee.
UNITED STATES of America, Appellant,
v.
Albert FERGUSON, Appellee.
UNITED STATES of America, Appellant,
v.
Donald F. CARONE, Appellee.
 Nos. 692-698, Dockets 73-1370, 73-1102 to 73-1108.
 United States Court of Appeals,
Second Circuit.
 Argued March 7, 1973.
Decided June 11, 1973.
 
 John W. Nields, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., on the brief), for appellant.
 Gregory J. Perrin, New York City, for appellees Carr and Ferguson.
 Max Wild, New York City (Rubin, Wachtel, Baum & Levin, New York City, on the brief), for appellee Carone.
 Peter Lushing, New York City (Robert E. Goldman, New York City, on the brief), for appellee Shea.
 Henry J. Boitel, New York City (Philip Vitello, New York City, on the brief), for appellee Bisgyer.
 Jack S. Hoffinger, New York City, for appellee Roemer.
 Before LUMBARD and TIMBERS, Circuit Judges, and WYZANSKI, District Judge.*
 LUMBARD, Circuit Judge:
 
 
 1
 The government appeals from an order of the Southern District dismissing the indictments against the seven appellees, Carr, Shea, Munns, Bisgyer, Roemer, Ferguson, and Carone. Alternatively, the government has petitioned this court for mandamus ordering the district judge to reinstate the indictments. We dismiss the appeal for lack of jurisdiction and we grant the petition for mandamus.
 
 
 2
 In seven indictments handed up February 25, 1970, appellees were individually charged with having conspired with a co-defendant, Fritz Claudius Mintz, and an unindicted co-conspirator, Morton Penn, to defraud the United States, in violation of 18 U.S.C. Sec. 371. The defendants were all employed as civilian buyers for European or American post exchanges. The indictments charged that the defendants conspired with Mintz and Penn, who represented certain American manufacturers, to receive substantial payments during the period from 1960 to 1967 in return for causing the post exchanges to purchase products offered by Mintz' and Penn's principals. Mintz was named as a co-defendant in each indictment.
 
 
 3
 All the indicted defendants-appellees pleaded not guilty to the indictment in which he or she was named. Mintz has not appeared; he is a fugitive who has been living in Europe since some time prior to the filing of the indictments.
 
 
 4
 In April, 1970, each of the appellees moved pursuant to Rule 48(a), F.R. Crim.P., for dismissal on several grounds, one of which was pre-indictment delay. However, defendants-appellees at no time made a request for a trial date. The district court denied all motions for dismissal.
 
 
 5
 On January 5, 1971, the Second Circuit Judicial Council promulgated the Rules Regarding Prompt Disposition of Criminal Cases ("Prompt Disposition Rules"), which became effective on July 5, 1971. After the Prompt Disposition Rules went into effect, the government listed the seven indictments on the monthly report of cases over six months old as an exception to the general sixmonth rule under Rule 5(e).
 
 
 6
 Ever since the filing of the indictments, the government has attempted to obtain Mintz' presence in the Southern District. However, he has remained in Europe and has refused to return. In June, 1971, the government commenced proceedings to extradict Mintz from Spain. Either because Mintz has left Spain or because the Spanish authorities have been unable to locate him, the extradition proceedings have not been successful. Thus, the government's efforts to return Mintz to this country have proved fruitless.
 
 
 7
 In an ex parte meeting with the government's counsel in March, 1972, the district judge insisted that the government notify the appellees of the basis for these cases being carried as Rule 5(e) exceptions, which the government did by letter on March 10, 1972. Shortly thereafter, the defendants each moved to dismiss the indictments under Rule 4 of the Prompt Disposition Rules, as well as under Rule 48(b), F.R.Crim.P. The government indicated that, if the district judge concluded that it was not reasonable to wait any longer for Mintz, it was able and willing to proceed with the trials forthwith. On December 5, 1972, the district judge dismissed the indictments under Rule 4 of our Prompt Disposition Rules.[1] Thereupon, the government took this appeal and brought the instant petition for mandamus.
 
 
 8
 Initially, we must agree with appellees' contention that this court is without appellate jurisdiction to review the order of the district court. Although as presently structured 18 U.S.C. Sec. 3731, which governs this court's jurisdiction of criminal appeals brought by the government, would clearly give this court jurisdiction to review the district court's order on appeal, the statute applicable to this appeal is Sec. 3731 as it was phrased prior to its amendment by Sec. 14(a) of the Omnibus Crime Control Act, 84 Stat. 1890 (1970). For reasons set forth in Part I of Chief Judge Friendly's opinion in United States v. DiStefano, 464 F.2d 845 (2d Cir. 1972), Sec. 3731 does not give this court jurisdiction to review on appeal the district court's dismissal of these indictments. Accordingly, we dismiss the government's appeals.
 
 
 9
 Turning to the petition for mandamus, we must acknowledge at the outset that mandamus will not issue merely as a substitute for ordinary appellate review. Mandamus is only available in extraordinary cases, where the action of the lower court amounts to a usurpation of power or a gross abuse of discretion. Mandamus cannot "be availed of to correct a mere error" of the district court. De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). Thus, we must determine whether any error of the district court is of sufficient magnitude to justify the issuance of mandamus.
 
 
 10
 The issue presently before us involves the proper application of Rules 4 and 5(e) of the Prompt Disposition Rules. Rule 4 provides that:
 
 
 11
 In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, or within the periods as extended by the district court for good cause, then upon application of the defendant or upon motion of the district court, after opportunity for argument, the charge shall be dismissed.
 
 Rule 5(e) states that:
 
 12
 In computing the time within which the government should be ready for trial, the following periods should be excluded:
 
 
 
 * * *
 (e) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance. In all other cases the defendant should be granted a severance so that he may be tried within the time limits applicable to his case.
 Here the threshold question under Rules 4 and 5(e) is whether the Prompt Disposition Rules require the government to apply to the district court for "a reasonable period of delay" under 5(e) beyond, and before the expiration of, the six-month period otherwise applicable under Rule 4. Two other questions are 1) how the 5(e) "reasonable period of delay" is to be determined and applied, and 2) who shall have the burden of moving for the severance contemplated by Rule 5(e) "in all other cases." This case demonstrates the significance of these questions, in that, if the government is not required to apply for a 5(e) "reasonable period of delay" before the end of the ordinary six-month period and if neither the defendant nor the court seeks a severance, there is considerable danger that the government will be "mouse-trapped" by the defendant moving for a Rule 4 dismissal some time after the six-month period and by the court retroactively determining that the period during which the government has delayed under Rule 5(e) was unreasonable. In the cases involved here, this series of events resulted in the mass dismissal of seven conspiracy indictments.
 The Rules were not intended to operate in this fashion. In light of United States v. Rollins, 475 F.2d 1108 (2nd Cir., 1973), it now seems clear that it was not necessary for the government to apply for an extension of the sixmonth period under Rule 5(e) before the end of the six month calendar period. Indeed, the phraseology of Rule 5 would seem to militate against any other result; for that rule clearly provides that "[i]n computing the time within which the government should be ready for trial," certain listed periods of time "should be excluded." Thus, it seems that one cannot sensibly talk about the six-month period having run or not without making initial reference to the excluded periods under Rule 5. As a result, it would involve strained logic to say that applications for exclusions under Rule 5 must be made to the district court before the elapse of the six-month period, since by definition any Rule 5 excluded period is not to be included in calculating the six-month period. Accordingly, we hold that, as indicated in Rollins, it was not necessary for the government to apply for a Rule 5(e) exclusion before the expiration of the six-month calendar period.
 A more difficult problem involves the proper course of action for the district court when it decides that the period of delay contended for by the government is unreasonable. The rule itself provides some guidance for this situation when it indicates that "[i]n all other cases, the defendant should be granted a severance so that he may be tried within the time limits applicable to his case." In determining the proper operation of Rule 5, it is important to remember that the primary purpose of the Prompt Disposition Rules was to vindicate the strong public interest in the prompt resolution of criminal prosecutions. It was the intent of the Circuit Council to stimulate the district courts and counsel to resolve criminal cases expeditiously. It was not the Council's aim to make the government vulnerable to dismissal of an indictment where a co-defendant is a fugitive from justice and the government, with some reason, delays action against defendants who are present.
 Defendants argue for a literal and technical application of the first sentence of Rule 5(e). In essence, they contend that, even if a defendant is joined for trial with a co-defendant as to whom the Rule 4 period has not run, if the court determines that the amount of delay that has elapsed up to the time the dismissal motion is made is unreasonable, then Rule 5(e) will not permit any period of time to be excluded in determining the Rule 4 period. On the other hand, the government argues that the first and second sentences of Rule 5(e) must be interpreted together. The essence of the government's position is that whenever the district court is presented with a question of the propriety of a Rule 5(e) exclusion, it should proceed as follows: 1) determine whether the defendant is joined with a co-defendant as to whom the Rule 4 period has not run; 2) if the first requisite is met, determine whether any further delay would be unreasonable under the circumstances-not determine retroactively whether the previous delay was unreasonable; and 3) determine whether, independently of the reasonableness of future delay, there is good cause for a severance. If the court determines either that further delay would be unreasonable or that there is good cause for a severance, the government contends it should then sever the defendant's case so that defendant's Rule 4 period would henceforth run independently of his codefendant.
 We think that the approach suggested by the government is more nearly consistent with the purpose of the Prompt Disposition Rules than is that urged by the defendants. Especially in light of the fact that the Prompt Disposition Rules do not require the government to seek the court's approval prior to the running of the six-month calendar period, interpreting Rule 5(e) in the manner defendants contend would interpose an unnecessary hazard in the way of the government's prosecution of criminal cases without any concomitant promotion of the public interest. Therefore, we conclude that the district court was in error when it dismissed the instant indictments. Rather, it should have found that, under the circumstances of Mintz' likely continued unavailability, any further delay under the auspices of Rule 5(e) would have been unreasonable, and thus should have severed Mintz from each defendant's indictment so that trial could proceed forthwith, as the government assured the court it was prepared to do. This would have given appropriate weight to both sentences of Rule 5(e) and would have adequately vindicated the public interest in the prompt resolution of criminal charges.
 The defendants argue that such a result does not comport with Rule 8 of the Prompt Disposition Rules, which states, in pertinent part, that "[a] demand by a defendant is not necessary for the purpose of invoking the rights conferred by these rules." We do not agree. The point that Rule 8 emphasizes is that it is not necessary for a defendant to demand a trial date in order to bring the Prompt Disposition Rules into operation. Rule 8 was not intended to place all the burdens of administering the Prompt Disposition Rules on the government. On the contrary, the prime responsibilty for enforcing the Rules, as well as for drafting them (see Rule 50(b), F.R.Crim.P.), is placed on the district court. This is necessarily so because the main interest to be served by the Rules is the public interest, and not the interest of one or both of the parties. Moreover, in the case of Rule 5(e), it would be unrealistic to expect the government to take the initiative to move for a severance, since in the natural course of events, the government would likely argue that the period of delay is reasonable and that there is no good cause for a severance.
 The Circuit Council must have expected either that the defendant would seek a severance or that the court would so proceed on its own motion. This is the logical fashion in which one would expect the second sentence of Rule 5(e) to be effectuated. And we see no reason under the policy of the Prompt Disposition Rules to dismiss an indictment merely because neither the defendant nor the district judge took the initiative in requesting or ordering a severance. Therefore, we do not see Rule 8 as precluding the interpretation that we give to Rule 5(e).
 Of course, that the district court might have been in error in dismissing the indictments is alone not sufficient to justify the issuance of mandamus. Mandamus "is meant to be used only in the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power."' LaBuy v. Howes Leather Co., 352 U.S. 249, 257, 77 S.Ct. 309, 314, 1 L.Ed.2d 290 (1957), citing Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953). It is argued that the district judge had unquestioned power or jurisdiction to dismiss the indictments and that, therefore, this is an inappropriate case for mandamus. However, we do not believe that the propriety of mandamus depends on whether the asserted error is labeled as an exercise of non-existent power or merely as an abuse of discretion. The important considerations, in the final analysis, are the gravity of the issue involved and the necessity that the reviewing judges see for corrective action.
 In recent years, the Supreme Court has held that the courts of appeals have the power to issue mandamus in certain instances in support of their supervisory authority over the district courts of the circuit. In LaBuy v. Howes Leather Co., 352 U.S. 249, 256, 260, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957), the Court, quoting from Los Angeles Brush Corp. v. James, 272 U.S. 701, 706, 47 S.Ct. 286, 71 L.Ed. 481 (1927), said:
 "Where the subject concerns the enforcement of the . . . [r]ules which by law it is the duty of this Court to formulate and put into force," mandamus should issue to prevent such action thereunder so palpably improper as to place it beyond the scope of the rule invoked.
 
 
 
 13
 * * *
 
 
 14
 We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system. The All Writs Act confers on the Courts of Appeals the discretionary power to issue writs of mandamus in the exceptional circumstances existing here."
 
 
 15
 See also Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). We think that this is a particularly appropriate case for our exercise of our supervisory authority by means of mandamus. The most important factor in this regard is that, in dismissing the indictments, respondent purported to apply rules promulgated by the judges of this court acting as a circuit council and, in so doing, interpreted those rules in a fashion that subverts the policies they were designed to serve. Having given the district courts a weapon by which to dismiss indictments, we have the power through mandamus to see that it is not wielded in a manner that subverts or ignores the interests that were intended to be served.
 
 
 16
 The issue in this case involves the proper interpretation to be given to our Prompt Disposition Rules. We have found that the district judge interpreted the Rules in a fashion that does violence to the policies that the Rules were intended to promote, without any offsetting benefit to the public interest. The result was a wholesale dismissal of seven indictments of government officials alleged to have conspired to receive bribes to influence their official conduct. There is a compelling public interest in the determination on the merits of charges of corrupt and illegal practices by those acting as government officers. In light of these factors, we conclude that corrective action is necessary within our supervisory authority over the district courts.[2]
 
 
 17
 Defendants argue that this is not a proper case for the issuance of mandamus in support of our supervisory authority because, if such a dismissal recurs in later cases, the government will have the statutory right of direct appeal to this court.[3] Therefore, defendants contend that mandamus is unnecessary to the effectuation of our supervisory authority. We do not agree. This is the first case that has come before this court in which the district court has interpreted the rules in question. Although we may later have similar cases under the new rules, which we can examine on appeal, this does not eliminate the uncertainty that the shadow of the district court's decision may throw over the conduct of the United States Attorney and the delay in the prosecution of future indictments pending appeals from dismissals such as that before us here.[4] It is the business of this court to prevent such potential disruption of the orderly administration of criminal justice in this circuit whenever it can; indeed, the very rules involved here were promulgated with that end in mind. Therefore, we conclude that this is an appropriate case for the issuance of mandamus to effectuate this court's supervisory authority.
 
 
 18
 Nothing in the decision of Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), prevents our issuance of mandamus in this case. The Court's decision in Will reversing the Seventh Circuit's grant of mandamus was based at least in part on the fact that the writ issued without any written opinion stating the reasons therefor. As the Court said:
 
 
 19
 Mandamus is not a punitive remedy. The entire thrust of the Government's justification for mandamus in this case, moreover, is that the writ serves a vital corrective and didactic function. While these aims lay at the core of this Court's decisions in LaBuy and [Schlagenhauf], we fail to see how they can be served here without findings of fact by the issuing court and some statement of the court's legal reasoning. 389 U.S. at 107, 88 S.Ct. at 280.
 
 
 20
 See United States v. Griesa, 481 F.2d 276, 278 (2d Cir., 1973). This "corrective and didactic function" that the Court seemed to recognize assumes a special significance when the question involves the application of a rule promulgated by the issuing court.
 
 
 21
 The Court's reference to LaBuy and Schlagenhauf would indicate that Will did not retreat from these earlier decisions. Defendants argue that Will means that the use of mandamus in support of the court's supervisory power, which was recognized in LaBuy and Schlagenhauf, is limited to civil cases. Indeed, the Court did seem to indicate that it did not find the necessary extraordinary circumstances to justify mandamus in a criminal case. After enumerating several situations where the writ had issued and where it had not, the Court said:
 
 
 22
 But this Court has never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal. We need not decide under what circumstances, if any, such a use of mandamus would be appropriate. It is enough to note that we approach the decision in this case with an awareness of the constitutional precepts that a man is entitled to a speedy trial and that he may not be placed twice in jeopardy for the same offense. 389 U.S. at 98, 88 S.Ct. at 275.
 
 
 23
 In this case, of course, we are dealing with a dismissal and neither of the constitutional precepts noted by the Court is in any way jeopardized by our issuance of mandamus. Thus, we find that Will presents no obstacle to the writ's issuance here.
 
 
 24
 Finally, defendants argue that, even if it is proper for the writ to issue on the question of the dismissal under Rule 4 of the Prompt Disposition Rules, the writ should not issue here because the dismissal was proper in any event on the motion to dismiss under Rule 48(b) of the Federal Rules of Criminal Procedure, on which the district judge did not rule. However, since we feel that the Rule 48(b) motion should have been denied, this is no obstacle to mandamus.
 
 
 25
 In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court laid down a balancing test to determine whether a particular delay had violated the defendant's right to a speedy trial. The Court listed four factors that should be considered in striking the balance: the length of delay, the reason for the delay, whether defendant has demanded a speedy trial, and prejudice to the defendant. The Court further indicated that these factors were interrelated and that no one was "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." We feel that the balance in this case must be struck in the government's favor. The delay here from the time of indictment to the making of the motions was slightly more than two years. This is far less than that involved in Barker, where the Court found no deprivation of the right. This delay is mitigated by the reason for the delay, the government's desire to secure the presence of Mintz and to try him jointly with each of his alleged co-conspirators, which would have obviated the inconvenience of a separate trial for Mintz.
 
 
 26
 In addition, there is the fact that none of the defendants asserted his speedy trial rights. Although this factor is not conclusive, the Supreme Court indicated that it is entitled to great weight:
 
 
 27
 Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely is the defendant to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. 407 U.S. at 531-532, 92 S.Ct. at 2192.
 
 
 28
 Finally, we must look to any prejudice suffered by the defendants. For the most part, defendants have asserted general claims of prejudice, such as damage to reputation while the indictments have been pending and the dulling of witnesses' memories. However, we find these claims to be relatively insubstantial in light of defendants' failure to demand a trial date. This seems to be the import of the language noted above from Barker v. Wingo. The fact that defendants did not assert their right to a speedy trial during the period of the delay is strong evidence that these general claims of prejudice are not substantial. In addition, defendant Bisgyer claims prejudice because two witnesses whom he had intended to call to testify about his character died during the period of the delay. The first of these witnesses died five months after the indictment was rendered, and the second died eleven months after the indictment. However, here again there was no complaint from Bisgyer about the delay until 24 months after the indictment. And there is conspicuously absent any allegation that Bisgyer is now unable to secure other character witnesses. Therefore, we conclude that this claim of prejudice is also insubstantial.
 
 
 29
 On balance, therefore, we find that there has been no violation of defendants' right to a speedy trial and that the Rule 48(b) motion would have had to be denied. Thus, it is appropriate for this court to issue mandamus directing the district judge to reinstate the indictments that he dismissed in reliance on the Prompt Disposition Rules.
 
 
 30
 Accordingly, the government's appeal is dismissed and its petition for mandamus is granted. The writ shall issue.
 
 
 
 *
 Senior District Judge of the District of Massachusetts, sitting by designation
 
 
 [1]
 The Second Circuit's Rules Regarding the Prompt Disposition of Cirminal Cases were superseded, effective April 1, 1973, by Plans for Achieving Prompt Disposition of Criminal Cases for each of the six districts in the circuit. These Plans were adopted in accordance with Rule 50(b), F.R.Crim.P. The Prompt Disposition Rules that are relevant to this decision remain unchanged in the Plans of each of the districts. Therefore, although this case is governed by the prior Prompt Disposition Rules, the decision bears also on the proper interpretation of the District Plans
 
 
 [2]
 In any event, as we have determined that the Prompt Disposition Rules should be interpreted, the Rule 4 period had not yet run at the time respondent dismissed the indictments. Therefore, even under a power analysis, it is clear that respondent was without power under Rule 4 to dismiss the indictments, and mandamus would be proper. See Hilbert v. Dooling, 476 F.2d 355 (2nd Cir., 1973)
 
 
 [3]
 This court's appellate jurisdiction in any subsequent dismissals under the District Plans for Achieving Prompt Disposition of Criminal Cases will be governed by 18 U.S.C. Sec. 3731 as amended by the Omnibus Crime Control Act, 84 Stat. 1890 (1970), which unquestionably gives this court appellate jurisdiction over such a dismissal. As noted earlier, this case is governed by Sec. 3731 prior to its amendment
 
 
 [4]
 Although the Prompt Disposition Rules by their offspring, the District Plans, have been rescinded, they are paralleled which took effect April 1, 1973. See Note 1, supra