UNITED STATES of America, Appellee,

v.

URBAN J. DIDIER, a/k/a "Harp,"
Defendant-Appellant.

No. 204, Docket 76–1331.

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1976.
Decided Oct. 13, 1976.

Julia P. Heit, Atty., New York City (Edward Masry, Los Angeles, Cal., of counsel), for defendant-appellant.

John P. Cooney, Jr., Asst. U.S. Atty., New York City (Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., Frederick T. Davis, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before ANDERSON, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge.

This case presents a good example of the kind of excessive delay that led Congress to pass the Speedy Trial Act. 18 U.S.C. §§ 3161–3174. Appellant's first trial on charges of conspiracy and transportation of stolen securities in foreign commerce ended on December 3, 1973, with the declaration of a mistrial. His retrial, which resulted in conviction, did not take place until 28 months later, over three years after the

filing of the indictment, over one year after our admonitions in *United States v. Drummond,* 511 F.2d 1049 (2d Cir.), *cert. denied,* 423 U.S. 844, 96 S.Ct. 81, 46 L.Ed.2d 65 (1975), and *United States v. Roemer,* 514 F.2d 1377 (2d Cir. 1975), and almost seven months after promulgation of the Southern District's 1975 Plan for the Prompt Disposition of Criminal Cases, which required retrial within 60 rather than 90 days. No acceptable excuse is offered for most of this delay. We therefore reverse.

On February 16, 1973, an indictment was filed in the Southern District of New York against appellant Didier and his two co-defendants Lombardozzi and Ashdown, charging them with conspiring to transport stolen securities in foreign commerce in violation of 18 U.S.C. §§ 2314 and 2315 and causing stolen securities to be transported in foreign commerce in violation of 18 U.S.C. §§ 2314 and 2. The government filed its notice of readiness for trial on April 19, 1973, and on September 18, 1973, Didier stipulated that the trial would be set for November 26, 1973, thus waiving his right to an earlier trial. Lombardozzi pleaded guilty to one count of the indictment, and Didier and Ashdown proceeded to trial, which ended on December 3, 1973, with the declaration of a mistrial.

The government did not file its notice of readiness for retrial until May 22, 1974, almost six months later. Thereafter, in a letter to the court dated June 10, 1974, the government requested that retrial be postponed until the fall on the grounds that Ashdown had been convicted in Texas on other charges, that the conviction was on appeal to the Fifth Circuit, and that oral argument in that case would not be heard until September. The government indicated that it would prefer to wait and see whether Ashdown's conviction was affirmed; if it was, Ashdown could be severed and given immunity in return for testimony against Didier. The government further noted that otherwise it would prob-

ably consider severing Ashdown's case from Didier's anyhow. Without consulting Didier,[1] the district court agreed to delay trial until the Fifth Circuit decision. Ashdown's conviction was not affirmed until March 17, 1975. *United States v. Ashdown,* 509 F.2d 793 (5th Cir.), *cert. denied,* 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975).

On February 11, 1975, in *United States v. Drummond,* 511 F.2d 1049 (2d Cir.), *cert. denied,* 423 U.S. 844, 96 S.Ct. 81, 46 L.Ed.2d 65 (1975), we held that Rule 6 of the Eastern District's Plan for Achieving Prompt Disposition of Criminal Cases mandated retrial, not merely government readiness, within 90 days after the final judgment on the first trial and that the exclusionary periods of Rule 5 did not toll the running of the 90 days under Rule 6. In view of the pre-existing confusion on the issue, however, we found the delay there involved to be excusable and thus in effect made our holding prospective. At the same time, we served notice that we would not tolerate such delays in the future. 511 F.2d at 1054. Shortly thereafter we repeated this warning in *United States v. Roemer,* 514 F.2d 1377, 1382 (2d Cir. 1975).

Following *Drummond,* the government, upon communicating with the court, was advised that Judge Cooper, to whom the present case had been assigned for retrial, would be sitting outside of the Southern District from February 17, 1975, to March 14, 1975. In a letter dated March 25, the government requested trial "as soon as possible in the convenience of the Court." Judge Cooper responded by letter dated March 27 ordering a pretrial conference on April 2, 1975. Copies of both letters were sent to Robert Talcott, the attorney in California who had represented Didier at the first trial. Unfortunately, Talcott had changed his address without informing either the government or the court, so the letters were returned unopened. When reached at his new offices in Los Angeles

---

1. Neither the Assistant United States Attorney's letter of June 10, 1974, to Judge Cooper nor the latter's reply dated June 17, 1974, signed by Judge Cooper's secretary indicate

that copies were sent to Didier or that he was informed of the contents. In effect, therefore, the government, proceeding ex parte, sought and gained a tactical advantage from the court.

Talcott advised that he had long since told Didier that unless Talcott was paid for his services he could no longer represent Didier. Some time later Talcott informed the government that he would not be representing Didier. In late April or early May, Didier advised the government that he had retained Rudolph E. Harper of Los Angeles to represent him at the upcoming retrial. Harper attended the pretrial conference on June 12, 1975, and trial was set for September 2, 1975.

On June 30, 1975, appellant filed his first motion to dismiss for failure of the government to abide by Rule 6 of the Plan for Achieving Prompt Disposition of Criminal Cases[2] and for violation of his Sixth Amendment rights. The court denied his motion on July 29, 1975, holding that, although appellant's waiver of his right to a speedy trial was voided and his right to a speedy trial revived by the declaration of a mistrial (a holding with which we agree), the government's tardiness in filing a notice of readiness and the delay thereafter was justified by the confusion as to the effect of Rule 6, which was not settled until *Drummond,* by the need to wait for the Fifth Circuit's decision, and by appellant's lack of counsel. 401 F.Supp. 4 (S.D.N.Y.1975).

In the meantime, the government had apparently made no effort to get in touch with Ashdown and offer him immunity in return for testimony against Didier. Ashdown's counsel advised the government on July 17, 1975, that his client's whereabouts were apparently unknown. Fearing that Ashdown had become a fugitive, the government moved for a bench warrant, which was granted July 18. A month later the government advised the court that Ashdown had still not been located and that there was no reason to believe that he would be arrested by the September 2 trial date. The court agreed *sua sponte* to adjourn the trial *sine die* until Ashdown could be found. The government then advised appellant's attorney of the adjournment. Appellant did not voice objection to the further delay.

On September 29, 1975, a revised Southern District Plan for Achieving the Prompt Disposition of Criminal Cases went into effect, replacing the old Rule 6 with a new Rule 7 that reduced the allowable period between mistrial and retrial to 60 days and eliminated extensions "for good cause."[3] On November 25, 1975, the government discussed with Didier's attorney possible dates for retrial after Judge Cooper would be free of other trials then scheduled and in progress, which other trials ultimately ran from September 2 to January 22, 1976, but they failed to agree on a trial date.

On December 30, 1975, appellant again moved to dismiss for the government's failure to bring the case to trial. The court denied the motion in a decision dated February 19, 1976, noting that Ashdown was still at large and that appellant's counsel had failed to contact the court to object to the adjournment *sine die*. Relying on *Unit-*

---

2. Rule 6 of the Southern District's 1973 Plan for Achieving Prompt Disposition of Criminal Cases provided:

"Where a new trial has been ordered by the district court . . ., it shall commence at the earliest practicable time, but in any event not later than 90 days after the finality of such order unless extended for good cause."

3. Rule 7 of the Southern District's 1975 Plan provides:

"Where a new trial has been ordered by the District Court or a trial or new trial has been ordered by an Appellate Court, it shall commence at the earliest practical time, but in any event, not later than 60 days after the finality of such order. If the defendant is to be retried following an appeal or collateral attack, the court trying the case may extend

such period for a total not to exceed 180 days from the date on which the order occasioning the retrial becomes final, where unavailability of witnesses or other factors resulting from passage of time shall make trial within 60 days impractical."

Rule 5(b) of the current Southern District Plan, promulgated July 1, 1976, provides:

"The retrial of a defendant shall commence within 60 days from the date the order occasioning the retrial becomes final. If the retrial follows an appeal or collateral attack, the court may extend the period if unavailability of witnesses or other factors resulting from passage of time make trial within 60 days impractical. The extended period shall not exceed 180 days."

ed States v. Lasker, 481 F.2d 229 (2d Cir. 1973), cert. denied, 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974), the court held that the burden was on appellant to move for a severance and that absent such a motion he could not be heard to complain. In any event, noted the court, appellant could not have been tried during the adjournment sine die because the court was otherwise occupied. Judge Cooper, however, directed that the retrial go forward on March 8, 1976, whether or not the government had apprehended Ashdown by that time. Didier himself requested an adjournment from March 8 until April 12 for business reasons, and the trial finally began on April 12, 1976, 28 months after declaration of the mistrial. At the trial, which lasted six days, the government produced six witnesses. Didier himself was the only witness for the defense. The jury convicted him on both counts.

## DISCUSSION

This case is not one of first impression. Although we have never ordered an indictment dismissed with prejudice for failure to abide by Rule 6 of the Southern District's 1973 Plan for Achieving Prompt Disposition of Criminal Cases (continued with modifications as Rule 7 of the 1975 Plan and Rule 5(b) of the current Plan), we have repeatedly warned that future delays in retrying a defendant once tried might lead to such dismissal.

In United States v. Drummond, 511 F.2d 1049 (2d Cir. 1975), our first case under Rule 6, the government was ready for retrial immediately following reversal and remand but trial did not take place for almost a year due to institutional delays. We held that Rule 6 required retrial, not merely government readiness for trial, within 90 days, and that Rule 5, which excluded certain periods of delay, did not apply to or modify Rule 6. Although most of the delay was attributable to the retrial judge's long engagement on the trial of another case, we stated that the Drummond case should have been transferred by the court sua sponte to

another judge as soon as the prospect of such delay became apparent. Id. at 1051–53. Because of the confusion that had existed as to whether Rule 6 of the Eastern District's Plan or the Second Circuit Rules previously promulgated governed retrials, the delay was deemed excusable for good cause. However, we gave the following clear warning:

"We stress, however, that we will not tolerate a delay of this sort occurring in the future. . . . Both the United States Attorney and the judge to whom a retrial is assigned should closely monitor its progress. Otherwise, under the Speedy Trial Act of 1974, which established new outside limits for the commencement of trials . . ., the Government may face dismissal of indictments involving serious charges." Id. at 1054.

In United States v. Roemer, 514 F.2d 1377 (2d Cir. 1975), we reiterated this warning:

"We wish to indicate, however, our serious concern at the sluggishness with which justice was finally achieved in this case and take this opportunity to remind district courts and government attorneys of their present responsibility to keep abreast of developments in cases to which they are assigned. Measures must be taken both in the offices of the courts and the offices of the government prosecutors to flag the time requirements in all criminal cases. Failure to do so in the future will not be treated lightly. Particularly under the generally more stringent requirements of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174, scheduled to take effect on July 1, 1975, negligence of the sort displayed in this case is likely to lead to the dismissal of indictments." 514 F.2d at 1382.

Finally, in United States v. Yagid, 528 F.2d 962 (2d Cir. 1976), we upheld the district court's dismissal of an indictment without prejudice because the defendant had not been retried within the 90-day period specified by Rule 6, following our order

for retrial on December 16, 1974, pointing out that the government had still had one month to begin trial within the 90-day period after *Drummond* came down, but failed to do so. We concluded:

> "In both *Drummond* and *Roemer* we found 'good cause' for extending the 90 day period but warned that such delays in the future would not be tolerated. That future has arrived. We hold that there was no good cause for extending the time." 528 F.2d at 967 (citations omitted).

■ Turning to the present case, the delay attributable to the government's pre-*Drummond* confusion as to which set of rules (the Second Circuit Rules or the Southern District's Plan) governed retrial was for the most part excusable. The government filed its notice of readiness for retrial 12 days before the running of the six-month period specified by the Second Circuit Rules Regarding Prompt Disposition,[4] which the government might reasonably have believed to have been applicable. The government was thus in technical compliance with the Second Circuit Rules and accordingly had violated no clear mandates of this Circuit during the period between declaration of the mistrial on December 3, 1973, and our decision in *Drummond,* filed on February 11, 1975.[5] The government's desire to await the results of Ashdown's appeal, however, was clearly not a sufficient reason for delay. While reasonable delays caused by missing defendants may be excusable, see *United States v. Lasker,* 481 F.2d 229 (2d Cir. 1973), *cert. denied,* 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871

(1974), here both defendants were available for trial. Ashdown's testimony was not necessary to the government's case, as is evidenced by the fact that appellant was ultimately convicted without it. At best the requested delay was a government maneuver designed to bolster its case against Didier; if Ashdown's conviction in the Fifth Circuit should be affirmed, thus assuring that he would serve a sentence on that charge, conviction of Ashdown in the present case would become less important and the government would be willing to give him immunity for his testimony against Didier. The desire to gain such a tactical advantage, however, is not a sufficient reason for trial delay. Cf. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Moreover, the government later acted with inexcusable sluggishness by failing to make any attempt to contact Ashdown after the Fifth Circuit's decision.

■ Whatever the merits of the reasons asserted by the government for delay prior to *Drummond,* however, appellant was not retried until more than a year after that decision was filed. Having been put on notice by that decision that responsibility for speedy trial enforcement rests primarily on the district courts and on the government, not on the defendant, the government should have attempted to obtain either a retrial within 90 days of the *Drummond* decision (handed down on February 11, 1975) or an explicit waiver of that 90-day period from appellant Didier. Instead it made only a half-hearted attempt to retry appellant within the 90 days, requesting

---

4. Rule 4 of the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, promulgated in 1971, had provided:

> "In all cases the government must be ready for trial within six months from the date of the arrest. . . . "

Rule 6 of the Southern District's 1973 Plan provided:

> "If the defendant is to be retried following a mistrial, . . . the time shall run from the date when the order occasioning the retrial becomes final."

5. Even under the Second Circuit Rules it was the government's duty to bring the case to trial as expeditiously as possible, and the six-month rule merely set an outside limit within which the government was required to be ready. Under the circumstances of this case, it is not at all clear why the government did not, immediately after the mistrial was declared on December 3, 1973, request that the case be set down for prompt retrial. We have no reason to believe that the government could not have been ready for retrial immediately since the witnesses and the defendants were still available and Didier still had counsel.

the court by letter dated March 25 (after 42 of the 90 days had expired) for a trial "as soon as possible in the convenience of the Court." The retrial judge, in turn, failed to set the case down for trial within the 90-day period.

■■■ As it turned out, of course, Didier was without counsel. Assuming that Didier's failure to secure counsel constituted "good cause" entitling the court, upon request by Didier to fix a trial date after the expiration of the 90-day period,[6] the proper procedure would have been to obtain an express waiver from Didier before the expiration of that period. Instead, the court held a pretrial conference on June 12, 1975, and set the case down for trial almost 90 days later, on September 2. Upon being put on notice by appellant's June 30th motion that he was in effect demanding a prompt trial and then being further advised on July 17 that Ashdown had probably gone fugitive, the district court should have *sua sponte* severed appellant's case for immediate retrial. See *Lasker, supra,* 481 F.2d at 233–34. Instead, it denied appellant's motion to dismiss and on August 18, without first giving appellant a chance to be heard, adjourned the trial *sine die.*

■■■ Although some of the delay prior to September 2, 1975, was thus excusable on the ground that Didier lacked counsel, any delay thereafter was unwarranted. The inexcusable delay already resulting from the government's desire for tactical reasons to await the results of Ashdown's Fifth Circuit appeal should not have been compounded because of his flight. Neither was the court's crowded calendar sufficient reason for delay. See *Drummond, supra,* 511 F.2d at 1053. Nor was the period specified by Rule 6 tolled by the pendency *sub judice* of appellant's motion to dismiss; to so construe Rule 6 would improperly penalize defendants for their invocation of speedy trial rules and run counter to the purposes of those rules. It is also questionable whether the short delay granted for appellant's business purposes was granted "for good cause." Defendants are not the only parties who have an interest in speedy justice; the public interest is at least as great. See *Hilbert v. Dooling,* 476 F.2d 355, 357–58 (2d Cir. 1973) (en banc).[7]

■■■ Further delay was also prohibited by the promulgation of the revised Southern District Plan for the Prompt Disposition of Criminal Cases, which became effective September 29, 1975. This Plan eliminated extensions "for good cause" in retrials after mistrial and reduced the period for retrial to 60 days. See footnote 3. Here the retrial did not take place for more than 180 days after the revised Plan went into effect.[8]

■■■ The suggestion that Didier waived his right to object to the violation of his rights under the Southern District's Plan by failing to demand a speedy trial after the court in August, 1975, acceded to the government's request for an adjournment *sine die* must also be rejected. The

6. The speedy trial rules cannot be used to deprive a defendant of adequate opportunity to prepare his defense. See *Gavino v. MacMahon,* 499 F.2d 1191, 1196 (2d Cir. 1974).

7. In reporting favorably upon the new Speedy Trial Act, 18 U.S.C. §§ 3161–3174, the House Committee on the Judiciary emphasized the importance of the public's interest, stating:

"The Committee believes that the right to a speedy trial belongs not only to the defendant, but to society as well. A defendant who is charged with a violation of the law becomes a burden to society in the sense that his status consumes the time and energy of all components of the criminal justice system with which he comes in contact: the police, magistrate, clerks of court, probation officers, judges and others." U.S.Code Cong. & Admin.News, 93rd Cong., 2d Sess. 1974, p. 7408.

8. Even when retrial after appeal or collateral attack is delayed on the ground that retrial would be "impractical," no delay of more than 180 days is allowed. Here, retrial did not take place within the 60 days allowed; in fact, it did not even take place within the 180 days that might have been allowed had extensions been properly granted because of the impracticality of immediate retrial and had this retrial been necessitated by appeal or collateral attack.

Southern District's Plan, unlike the Second Circuit's Rules construed in *Lasker, supra,* places the primary responsibility for speedy trials on the district courts and on the government.[9] See *Drummond,* 511 F.2d at 1054; *Roemer,* 514 F.2d at 1382. Indeed, the new plans unlike the superseded Second Circuit Rules, state specifically that "[t]he court has sole responsibility for setting and calling causes for trial. . . ." 1973 Rule 9(a); 1975 Rule 10(a). All of the plans provide: "A demand by a defendant is not necessary for the purpose of invoking the rights conferred by these rules." 1973 Rule 7; 1975 Rule 8. Even though a demand is unnecessary, appellant here had indicated his desire for a prompt trial by moving to dismiss for failure to bring the case promptly to trial. After the government and the district court then arranged ex parte for an indefinite delay which violated appellant's rights under the Rules, appellant did not waive those rights by failing to ask the court to undo what it had already done. To imply a waiver under such circumstances would violate not only the letter but the spirit of the Southern District's Plan and be inconsistent with the duties placed by it upon the government and the court.

▆▆▆▆ The burden of objecting to further delay could not so easily be shifted to the defendant. In order to protect the public's interest in a speedy retrial, if the government wanted to retry Didier at a time later than that specified in the Southern District's applicable plan, it was first obligated to seek an explicit waiver from the defendant [10] and his co-defendant Ashdown, and, whether or not the waivers were obtained, to apply to the court for permission for such an extension *before* the applicable deadline had passed. The court, in turn, could grant permission only if the requested extension would be consistent with the applicable speedy trial rules.[11] In any event it was improper to extend the date for trial *sine die* rather than for a specific period of time. Had the government and the district court observed these procedural safeguards, it is unlikely that events would have reached the point where reversal would be required.

This is not a case in which a defendant asked for substantial continuances or attempted to delay trial, but rather one in which the government sought much of the delay for tactical purposes and the district court failed to insist that deadlines be met, even after *Drummond* placed the handwriting in bold letters on the wall and Congress passed the Speedy Trial Act with its harsh strictures. Indeed, effective July 1, 1976, each of the district courts of this Circuit has adopted a new set of time limits within which criminal cases must be tried, which will be progressively shortened until, effec-

9. The district court's reliance on *Lasker, supra,* for the proposition that a defendant who has not moved for severance cannot be heard to complain about delays occasioned by his co-defendant's absence was misplaced. *Lasker* was decided under the Second Circuit Rules which were superseded by the district court plans; under the subsequent district court plans, responsibility for according a defendant a timely trial rests primarily on the district courts and the government. A defendant's objection to trial delays (appellant clearly did object in this case) is relevant under the current plans only in determining what remedy should be used to deal with the delay. Cf. Speedy Trial Act § 101(a)(2), 18 U.S.C. § 3162(a)(2) ("In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: . . . the facts and circumstances of the case which led to the dismissal . . . .").

10. In this case, the government in fact obtained only Ashdown's consent before requesting that retrial of both defendants be delayed until after the Fifth Circuit decided Ashdown's appeal. It made no effort to contact Didier, who was not even informed of the first adjournment *sine die* after it had been granted.

11. Under the Southern District's current Plan for Prompt Disposition of Criminal Cases, promulgated on July 1, 1976, pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161–74, no continuance or waiver of time limits is effective unless first approved by the court in accordance with § 3161(h)(8), which authorizes the court to grant a continuance only upon finding "that the ends of justice served by such action outweigh the best interest of the public and the defendant in a speedy trial" and setting forth in the record of the case the reasons for its finding.

tive July 1, 1979, a defendant must be brought to trial within 100 days after arrest, excluding certain specified periods, or the case will be dismissed. Faced with this prospect the interim rules at issue in the present case were promulgated. If they are to mean anything they must be enforced.

Accordingly we reverse the conviction and remand the case for dismissal of the indictment.