UNITED STATES of America, Appellee,

v.

Frank AMENDOLA, Appellant.

No. 969, Docket 76–1491.

United States Court of Appeals, Second Circuit.

Argued April 19, 1977.

Decided May 16, 1977.

Rehearing and Rehearing En Banc Denied, Aug. 30, 1977.

Roger J. Frechette, New Haven, Conn., for appellant.

Peter R. Casey, III, Sp. Atty., Hartford, Conn. (Peter C. Dorsey, U. S. Atty., for the District of Connecticut, New Haven, Conn., of counsel), for appellee.

Before MOORE, SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Frank Amendola appeals from a judgment of conviction in the United States District Court for Connecticut, after a four-day jury trial before Judge Robert C. Zampano. Amendola was found guilty of one count of conspiracy and one count of conducting an illegal gambling operation, in violation of 18 U.S.C. §§ 371 and 1955. While he makes many arguments on appeal, only two—that his retrial violates Connecticut's Speedy Trial Plan and that a violation of procedures for installing a pen register mandates suppression of evidence—warrant discussion. We find no error and affirm.

## I.

Amendola, Daniel Valeriano, and five other individuals were indicted on May 3, 1974. On July 12, 1976 the five other individuals pleaded guilty, and on July 20, 1976 a jury trial began for Amendola and Valeriano. The jury found Valeriano guilty and was unable to reach a decision on Amendola. On August 4, 1976 Judge Zampano granted Amendola's motion for a mistrial.

The government filed its Notice of Readiness for retrial on August 8, 1976. On October 20, 1976, following a denial of Amendola's motion to dismiss, his second trial began. On November 12, 1976 the jury returned a verdict of guilty.

Amendola says that the 77-day delay between his two trials violates Rule 5(e) of the Connecticut Speedy Trial Plan ("the Plan")[1] and § 3161(e) of the Speedy Trial Act ("the Act"), 18 U.S.C. § 3161 et seq.[2] Relying on *United States v. Didier,* 542 F.2d 1182 (2d Cir. 1976), he claims these violations require dismissal of the indictment with prejudice.

 While both the Plan and the Act require retrial within 60 days, neither the Plan nor the Act requires dismissal of Amendola's indictment. Section 3163(c) of the Act says the sanction of dismissal becomes effective on July 1, 1979. The preamble to the Plan, which became effective July 1, 1976 says "none of the sanctions encompassed in 18 U.S.C., Section 3162 will become effective until July 1, 1979, the deadline mandated by Congress."

> If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within sixty days from the date the action occasioning the retrial becomes final.

---

1. Rule 5(e) says in pertinent part:

 The retrial of a defendant shall commence within 60 days from the date the order occasioning the retrial becomes final.

2. Section 3161(e) says in pertinent part:

*Didier* was decided on October 13, 1976, after Amendola's 60-day period had expired and only a week before his second trial began. *Didier* involved the Speedy Trial Plan of the Southern District of New York and a delay of 28 months after the first mistrial, with "no acceptable excuse . . offered for most of this delay." 542 F.2d at 1184. In *Didier,* "the government sought much of the delay for tactical purposes and the district court failed to insist that deadlines be met." *Id.,* at 1189. Here there is no claim that the government sought the delay, and Judge Zampano, faced in September, 1976 with Amendola's second trial and three other ready criminal trials, sought to complete all of them quickly. The 77-day delay in Amendola's second trial is the type of problem which the Plan, according to its preamble, "hope[s] . . will be identified and solved before sanctions are applicable." This minimal violation of the Plan, coming at about the same time *Didier* was decided, does not warrant dismissal.

## II.

Based on information derived from an authorized wire tap interception and pen register in January 1973, Judge Thomas F. Murphy on May 22, 1973 authorized the placing of a pen register on Mrs. Amendola's telephone for 15 days. While three of the other defendants received an inventory notice in July 1973, neither Mrs. Amendola nor Mr. Amendola received any notice of this pen register.[3] Amendola claims it was, therefore, error not to grant his motion to suppress the evidence derived from the pen register.

In *Application of the United States in Matter of Order, etc.,* 538 F.2d 956 (2d Cir. 1976), *cert. granted,* 429 U.S. 1072, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977), we held that a pen register is not subject to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, and we said that the court's power to authorize a pen register is either "a logical derivative

of Rule 41 [of the Federal Rules of Criminal Procedure] or a matter of inherent judicial authority." *Id.,* at 960. Rule 41(d) says, "the officer taking property . . . shall give to the person from whom or from whose premises the property was taken a copy of the warrant."

While we do not approve of a violation of Rule 41(d), on this record there was no error in refusing to suppress the evidence. *United States v. Klapholz,* 230 F.2d 494 (2d Cir.); *cert. denied,* 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956). In *United States v. Burke,* 517 F.2d 377, 386–87 (2d Cir. 1975), we said that evidence should not be suppressed for a violation solely of Rule 41 "unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule" (footnotes omitted). *Cf. United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977) (government's inadvertent failure to comply with inventory notice requirement of Title III does not justify suppression of evidence derived from authorized wiretap interception).

We believe Judge Murphy would have authorized the pen register even if he had thought notice was required and would be given. The government, not having the benefit of our 1976 decision in *Application of the United States* and thinking a pen register was subject to Title III, complied with Title III and fully reported the results of the pen register to Judge Murphy on June 16, 1973. We note that not until March, 1974 did the government identify Amendola as one of the persons whose conversation was intercepted in January, 1973.

We have carefully considered Amendola's other claims and find no merit in any of them. We affirm the conviction.

---

3. Amendola could have learned of the pen register after June 21, 1974, when all the documents relevant to the electronic surveillance were ordered unsealed.